# APPLICATION OF DAN JERREL FOR A WRIT OF HABEAS CORPUS

## (93 N.W.2d 614)

(File No. 9731. Opinion filed December 22, 1958)

**Robert L. O'Connor,** Sioux Falls, for Petitioner-Appellant.

**Phil Saunders,** Atty. Gen., **E. D. Barron,** Asst. Atty. Gen., for Respondent.

BOGUE, J. The petitioner appeals from the order and judgment quashing a writ of habeas corpus.

The petitioner on the 9th day of April, 1956, was found guilty of the crime of grand larceny by a jury in Corson County, South Dakota. Thereafter the trial judge sentenced this petitioner "to five years in the South Dakota State Penitentiary which is suspended during good behavior and you are subject to and must comply with the rules and regulations of the South Dakota Department of Probation and Parole; provided further that as a part of this sentence you may return to your home State of Montana but shall remain under the jurisdiction of the Department of Probation and Parole to which you shall report on the first day of each month in writing by mail. You shall comply with the provisions of Section 13.5307 which will be supervised by the Department of Probation and Parole of the State of South Dakota or the State of Montana if accepted by them. It is further ordered that restitution in the amount of $100 shall be paid to James Clark within a year from the date of this sentence. Upon your failure to comply with this sentence and judgment you will be dealt with as provided by law."

A petition for revocation of suspension of petitioner's sentence dated the 21st of August, 1956, was presented to the circuit court of the Twelfth Judicial Circuit, this being the same court that granted the suspension, by the State's Attorney of Corson County. The grounds alleged for revocation of sentence were the following:

"The undersigned has been furnished with

information from the Sheriff of Miles City, Montana, stating that said Dan Jerrel had been frequenting bars, been in various altercations, and keeping bad company. Under Letter of August 13, 1956, information has been received advising that subject 'is a frequent visitor in the Miles City area and is affiliated with several well known ex-convicts.' Further the undersigned is advised by the department of Probation and Parole that said defendant has not been making any reports."

The court on the 23rd of August 1956 ordered that the suspension of petitioner's sentence be revoked and directed that a warrant issue ordering the delivery of the petitioner to the court forthwith. On the same day a bench warrant was issued directing the arrest of Dan Jerrel and directing that he be brought before the court to answer charges and that he be delivered into the custody of the Sheriff of Corson County pending disposal by the court.

On the 29th of September 1956 the petitioner was arrested by Montana authorities based on a fugitive from justice warrant issued out of a justice of peace court in Montana. On the 1st day of October 1956 the petitioner entered a plea of not guilty and the Justice of Peace set the 31st day of October 1956 as the day for trial, and set petitioner's bond in the amount of $1,500. The bond was provided and the petitioner was released.

On the 1st day of October 1956 the State's Attorney of Corson County, South Dakota, made application to the Governor of the State of South Dakota for a writ of extradition. On the 2d day of October 1956 the Governor of South Dakota issued a requisition to the Governor of the State of Montana for this petitioner. On the 4th of October 1956 the Governor of Montana issued a rendition warrant. On the same day the petitioner was arrested and taken to the Great Falls County jail. The petitioner was not taken before a judge of a court of record of the State of Montana, nor was he informed of any rights he might have but was forthwith put into a car and returned to Corson County, South Dakota.

On the 6th day of October 1956 the petitioner was taken before the court. The court summarily ordered the original sentence restored in its entirety and the petitioner committed to the State Penitentiary for a term of five years.

The issues presented by this appeal are: (1) Did the court have jurisdiction to enable it to commit petitioner after revoking his suspended sentence? (2) If the court did have such jurisdiction, was petitioner entitled to a hearing on the question of whether or not he violated the conditions of his suspension?

The petitioner claims that the courts of this state lost jurisdiction when after instituting extradition proceedings in the State of Montana, South Dakota by-passed or abandoned these proceedings and forcibly brought him back to this state. South Dakota adopted the Uniform Law on Interstate Extradition by Ch. 200 of the Laws of 1953. Montana adopted the same act by Ch. 190 of the Laws of 1937. Section 10 of both chapters provide:

> "No person arrested upon such warrant shall be delivered over to the agent whom the Executive Authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus."

It is undisputed that petitioner was not taken before a judge of a court of record in the State of Montana or that the other provisions of Section 10 were complied with. It must be borne in mind here that the petitioner was not in the position of one accused of a crime. He had already been convicted of a crime.

Pursuant to SDC Supp. 13.55 the Governor of this state executed a compact on behalf of the State of South Dakota

with the other states legally joining. Montana expressly joined therein. This compact provided that under certain conditions it would be competent to permit any person convicted of an offense within this state and placed on probation or released on parole to reside in the other state while on probation or parole, also providing that the duly accredited officers of a sending state may enter the receiving state and there apprehend and retake any person on probation or parole. "For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of state party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state."

█ When the court suspended the execution of the sentence, petitioner was placed on probation and allowed to go to the State of Montana. Clearly, at any time, therefore, he could have been returned to this state under the provisions of the compact. Petitioner argues that because the state first proceeded under Ch. 200 of the Laws of 1953, it is precluded from operating under the terms of the compact. Section 26 of said Chapter 200 expressly provides:

"Nothing in this act contained shall be deemed to constitute a waiver by this state of its right, power or privilege to try such demanded person for crime committed within this state, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any crime committed within this state nor shall any proceedings had under this act which result in, or fail to result in, extradition be deemed a waiver by this state of any of its rights, privileges or jurisdiction in any way whatsoever."

We are of the opiniion that the state was proceeding in a proper manner in returning the petitioner to the State

of South Dakota, that it could at any time abandon its proceedings under the Uniform Extradition Act and proceed under the terms of the compact without losing jurisdiction of the petitioner.

■ The court suspended execution of petitioner's sentence pursuant to SDC Supp. 34.3708. In accordance with the provisions of this statute the court has "power to suspend the execution of sentence during good behavior, and subject to such conditions or restitutions as the court or judge thereof may impose." The granting of a suspended sentence is wholly within the discretion of the court. In State ex rel. Caldwell v. Skinner, 59 S.D. 68, 238 N.W. 149, 152, we said:

"The trial judge may act in the matter entirely upon his own motion, or if he sees fit he may doubtless act upon the suggestion or request of either the defendant or the state; but the entire matter is intrusted to his discretion. He may in his discretion refuse in any case to suspend sentence, and it is equally discretionary with him, we think, whether or not he will hear and entertain an application for suspension. So far as any individual defendant is concerned, suspension of sentence is a mere act of grace. He has no legal right under our statute either to be granted suspension or to apply therefor and be heard."

■ It is sometimes argued that as the suspension of sentence is an act of grace by the court to the convict, this grace can be withdrawn by the court at its pleasure. We are of the opinion that such is not the intent of SDC Supp. 34.3708. It will be noted that the power of the court is to suspend during good behavior and subject to the conditions and restitutions imposed, not to suspend during the pleasure of the court. When the aims of suspension of sentences are considered the intent of the statute becomes even more apparent. Before revoking the suspension of the execution of a sentence by the court there must be some showing that the convicted person's behavior is not good or that he has violated the conditions or restitutions

imposed upon him. Such factual showing must be sufficient to justify the exercise of discretion by the court in revoking the suspension.

■ Our statutes are silent as to the procedure to be taken by the court in revoking suspension of sentence. The question thus arises as to whether the convicted person is entitled to a hearing with such notice as would give him an opportunity to refute or explain the charges brought against him. See 29 A.L.R.2d 1074. The petitioner maintains that he was entitled to such hearing and further that the court in this matter acted arbitrarily.

■ We are of the opinion that the absence of such hearing does not violate any constitutional rights of the petitioner. The petitioner in the case of Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 819, 79 L.Ed. 1566, made the same contention as is made here. The court therein said:

> "In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose."

As the petitioner's suspension is an act of grace under our statute the same as under federal statute, the petitioner has no greater rights under the Constitution of the State of South Dakota. Neither do our statutes give a convicted person an absolute right to such hearing. However, before the court can make a valid order revoking the suspension of the sentence, either the ex parte showing must be sufficient to justify the exercise of the court's discretion thereon, or a hearing must be held wherein such showing is made.

■ The hearing so held by the court may be informal and does not mean that the procedural steps of a trial need be observed. Escoe v. Zerbst, supra. In discussing what type of a hearing a convicted person is entitled to under such circumstances Justice Cardozo in the Escoe case laid down the following test:

"It does mean that there shall be an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper."

The ex parte factual showing in this case, in our opinion, was not sufficient to justify the exercise of the court's discretion in revoking the suspension of sentence. We are forced to conclude, therefore, that the court in revoking the suspension of petitioner's sentence abused its discretion in failing to carry the probe deeper. We hold that revocation of the suspension of petitioner's sentence is invalid. The petitioner shall, therefore, be discharged from his confinement. This discharge is without prejudice to his commitment as a result of subsequent proceedings conforming hereto.

Reversed.

All the Judges concur.