**FARMERS AND MERCHANTS BANK
AND TRUST OF WATERTOWN,
Plaintiff and Appellant,**

v.

**Nick KSENYCH, Defendant
and Respondent.**

**No. 11751.**

Supreme Court of South Dakota.

Argued April 27, 1976.

Reassigned Jan. 6, 1977.

Decided April 1, 1977.

Austin, Hinderaker & Hackett, Watertown, for plaintiff and appellant.

Osheim & Fox, Watertown, for defendant and respondent.

MORGAN, Justice (on reassignment).

Plaintiff-appellant, Farmers and Merchants Bank and Trust of Watertown, South Dakota (Bank), filed an action on October 24, 1974 against defendant-respondent, Nick Ksenych (Ksenych), seeking to recover a new 1974 Dodge pickup or its value. Ksenych counterclaimed for title to the vehicle. The case was submitted to the court on a Stipulation of Fact, the court's memorandum decision was delivered on June 19, 1975, and judgment entered July 11, 1975, finding against the Bank and declaring that title to the Dodge pickup belonged to Ksenych. The Bank appeals from the judgment. We affirm as to the result.

■ According to the stipulation of facts which has the status of special findings for the purpose of review,[1] Williamson Dodge, a dealer in Dodge vehicles, entered into a "floor-plan" arrangement with the Bank. Under this arrangement Chrysler Motors Corporation would mail a draft drawn on the Bank covering Williamson Dodge's cost of a specific vehicle and would also mail the manufacturer's statement of origin for that vehicle to the Bank. Once the draft was drawn on the Bank, Williamson Dodge would then execute a note with the Bank. After Williamson Dodge sold the vehicle and deposited the proceeds of the sale with the Bank, the Bank would give Williamson Dodge the manufacturer's statement of origin for the vehicle. Through this arrangement Chrysler Motors agreed to transport a 1974 Dodge pickup to Williamson Dodge November 12, 1973. The manufacturer's statement of origin to the vehicle was retained by the Bank, and the vehicle was placed on Williamson Dodge's lot. On December 26, 1973 the Bank filed a financing statement with the Secretary of State, State of South Dakota, showing the debtor as Williamson Dodge and T. V. Williamson, Watertown, South Dakota and covering all "1974" Dodge vehicles."

On December 28, 1973 Williamson Dodge sold a new 1974 Dodge pickup to Ksenych for $5,000 cash, plus a trade-in. Williamson Dodge was to make an application for a certificate of title in Ksenych's name, which is allowable under SDCL 32–3–25. However, the certificate of title was never given to Ksenych since Williamson Dodge did not gain possession of the manufacturer's statement of origin when it failed to remit the proceeds of the Ksenych sale to the Bank. On January 5, 1974 Williamson Dodge closed its business with its remaining assets taken over by Williamson Dodge's secured creditors.

On October 24, 1974 the Bank, while asserting their superior interest in the collateral upon Williamson Dodge's default, filed this action to recover the 1974 Dodge pickup from Ksenych. Ksenych counterclaimed for clear title to the vehicle and responded by alleging that the purchase out of Williamson Dodge's inventory conveyed clear title to him according to the provisions of the Uniform Commercial Code.

The court ruled by its memo decision of June 19, 1975 that the Certificate of Title Act, SDCL 32–3–1, et seq. controlled the outcome, not the Uniform Commercial Code, SDCL 57–1–1 et seq., and that the Bank legally held title to the vehicle under SDCL 32–3–1. He further held however that the Bank, by its conduct in clothing Williamson Dodge with the apparent authority to sell the vehicle, was estopped from asserting such title.

The first question on appeal as stated by the appellant is "Do the general provisions of the Uniform Commercial Code which protects buyers of encumbered consumer goods revoke sections 32–3–10 and 32–3–37 of the South Dakota Compiled Laws of 1967 which protect the lien of the holder of a security interest in a motor vehicle when the title documents are in his possession?" Respondent paraphrases this question to be whether or not the plaintiff's claim to the vehicle under SDCL 32–3–10 and 32–3–37 is paramount and superior to the claim of defendant in said vehicle under SDCL Chapter 57, commonly referred to as the Uniform Commercial Code.

1. *Wastun v. Lincoln National Life Insurance Co. of Ft. Wayne, Indiana,* 8 Cir., 12 F.2d 422.

In certain particulars including those which relate to this action, Chapter 57–37 relating to secured transactions under the Uniform Commercial Code and Chapter 32–3 relating to registrations, liens and transfers under the motor vehicle code deal with the same subject matter and when statutes are in pari materia they should be considered concurrently whenever possible.[2] If they can be made to stand together, effect should be given to both as far as possible.[3]

In reviewing the legislative history of the statutes [4] in question, we find no conflict that cannot be resolved while giving full force and effect to each. The sections in question which are part of SDCL Chapter 32–3 titled "Registration, liens and transfers" will be referred to collectively as the Title Statutes. These statutes appear to have their inception in Chapter 229 of the Session Laws of 1951. Section 2 of that enactment at (4) provides that "no person, *except as provided in this chapter* (emphasis added) obtaining or getting possession of a motor vehicle shall acquire any right, title, claim, or interest in or to such motor vehicle, until he shall have had issued to him a certificate of title to such motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same;" and goes on to provide "nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title * * * for a valuable consideration." This provision is now codified as SDCL 32–3–10. Section 3(1) of the same Chapter 229, Session Laws of 1951, goes on to provide in substance that any secured transaction,[5] if accompanied by delivery of a manufacturer's

certificate, shall be valid against the creditors of the mortgagor and subsequent purchasers. This portion of the section as later crucially amended is now codified as SDCL 32–3–41. The entire section goes on to include all the materials contained in the present codification as SDCL 32–3–35 to 41, inclusive, SDCL 32–3–43 and 32–3–44, thus encompassing all of the title sections which appear to be in controversy.

Chapter 186 of the Session Laws of 1965 amended Chapter 229 by adding trailers and semitrailers to the provision of the statute and amended, most importantly, the provisions of section 3(1) to specifically except trust receipts from the enumerated security documents contained in the statute [6] and added a provision: Provided, however, that "this Section shall not apply to any security interest in a motor vehicle in stock or acquired for stock purposes if such security interest was created in a trust receipt transaction governed by the uniform trust receipts act, 39.18 SDC 1960 Supp." In 1967 by enactment of Chapter 188 the legislature again amended the provision by substituting "financing statement" for "trust receipt" and changing the reference to the Trust Receipts Act to the Uniform Commercial Code. This crucial enactment is now codified as SDCL 32–3–41 and 32–3–42.

Thus, reviewing the history of the enactments, it is not difficult to give reasonable interpretation to all of the provisions in accordance with the rule of pari materia, the object of which is to carry into effect the intention of the legislature and which proceeds upon the supposition that several

---

**2.** *In re Iversen's Will,* 80 S.D. 20, 118 N.W.2d 17.

**3.** *Knudson v. Powers,* 56 S.D. 613, 230 N.W. 282.

**4.** In case of doubt and uncertainty in the meaning of the provisions of the revised statute, its true meaning may be ascertained by resort to the original statute. *City of Redfield v. Wharton,* 79 S.D. 557, 115 N.W.2d 329.

**5.** "Any mortgage, conveyance intended to operate as a mortgage, trust receipt, conditional

sales contract, mechanic's lien, or similar instrument covering a motor vehicle, * * *." Chapter 229, Session Laws of 1951, Section 3(1).

**6.** "Any mortgage, conveyance intended to operate as a mortgage, conditional sales contract, mechanic's lien, or similar instrument other than a trust receipt covering a motor vehicle, * * *." Chapter 186, Session Laws of 1965, Section 3(1).

statutes were governed by one spirit and policy and were intended to be consistent and harmonious in their several parts and provisions.[7]

First of all, the provisions of SDCL 32–3–10, including the reference to "waiver or estoppel", are subject to any exceptions provided elsewhere in the chapter. We then find that the provisions regarding the secured transactions were amended in 1965 to except "trust receipt transactions." The trust receipt was the principal device used in "floor-planning" arrangements.[8] The Trust Receipts Act was repealed by enactment of Chapter 150 of the 1966 Session Laws which was the enactment of the Uniform Commercial Code effective July 1, 1967. The 1967 Legislature by enactment of Chapter 188 amended the financing portion of the Title statutes[9] to substitute financing statement, the appropriate Uniform Commercial Code document, for trust receipt and substitute the provisions of the Uniform Commercial Code for the then repealed Trust Receipts Act. The intent of the legislature to except floor-planning arrangements from the provisions of the Title statutes in question is thus clearly documented.

■ The floor-planning arrangement between the Bank and Williamson as described in the stipulation of facts is clearly under the provisions of the Uniform Commercial Code, and the defendant who, the stipulation further discloses was a buyer in the ordinary course of business,[10] is entitled to the protection afforded by the Uniform Commercial Code.

We must next turn to the question of what protection he is afforded. The plaintiff contends that even if the provisions of the Uniform Commercial Code are applicable the Bank is still protected because the transaction falls under the provisions of SDCL 57–37–31 governing the sales of consumer goods and farm equipment which provides that in the case of consumer goods, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes unless prior to the purchase the secured party has filed a financing statement covering such goods. The stipulation of fact discloses that such a statement was filed in the office of the Secretary of State at Pierre two days prior to the transaction under which this dispute arose.

■ The respondent on the other hand contends that he is entitled to the benefit of SDCL 57–37–30, sale of goods in ordinary course of business, which provides that a buyer in the ordinary course of business other than a person buying farm products or a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. The section which the bank contends for is, as far as pertinent to this transaction, confined to consumer goods which are defined as "used or bought for use primarily for personal, family or household purposes." The section the defendant relies on is restricted to "buyers in the ordinary course of business" which under the provisions of SDCL 57–1–2(9) restricts the application to buyers (except pawnbrokers) "from a person in the business of selling goods of that kind", thus, in the terminology of the article is primarily restricted to inventory. It is obvious to us that the motor vehicle purchased constituted inventory as opposed to consumer goods and thus the provisions of SDCL 57–37–30 are applicable. It would seem that the bank was originally of a similar view inasmuch as under the provisions of SDCL 57–38–1 the proper place to file a financing

---

7. In re Schneider's Estate, 72 S.D. 174, 31 N.W.2d 261.

8. 68 Am.Jur.2d Secured Transactions, Section 122 at page 965.

9. SDCL 32–3–41.

10. SDCL 57–1–2(9).

statement to perfect a security interest in consumer goods is in the office of the register of deeds in the county of the debtor's residence and the proper place to file in order to perfect a security interest in inventory is in the office of the secretary of state, which as previously noted is where the bank did indeed file its financing statement.

Having considered all of the applicable statutes together, we are of the opinion that upon the sale of a new automobile from inventory by a dealer in the ordinary course of business, the buyer takes free of any security interest under a floor-planning arrangement, even though perfected, and even though the buyer knows of the terms of the security agreement.

We therefore hold that the defendant was entitled to a judgment in his favor and against the bank under the provisions of the applicable Motor Vehicle Title Statutes and the Uniform Commercial Code. Having thus decided, we have no need to consider the second question presented in the appeal as to whether or not the plaintiff is estopped from asserting a superior claim upon which basis the trial court did enter judgment.

The trial court having reached the right result, regardless of the reasoning or theories on which it is predicated, its judgment will be affirmed.[11]

All the Justices concur.

---

11. *Steinmetz v. Schultz,* 59 S.D. 603, 241 N.W. 734; and *Gurney v. Gurney,* 60 S.D. 607, 245 N.W. 396.