**Frank ISLAND, Plaintiff and Appellant,**

v.

**Glen WARKENTHIEN, Defendant and Appellee.**

**No. 12724.**

Supreme Court of South Dakota.

Argued Nov. 15, 1979.

Decided Jan. 16, 1980.

Donald H. Breit, Sioux Falls, for plaintiff and appellant.

James R. Myers of Simons, Gibbs, Feyder & Myers, Sioux Falls, for defendant and appellee.

MORGAN, Justice.

Appellant-Island brought this action in Circuit Court, Second Judicial Circuit, seeking recovery of an automobile which was in the possession of appellee-Warkenthien. The trial court applied the provisions of South Dakota's Uniform Commercial Code (SDCL Tit. 57) and concluded that appellee, as a good faith purchaser, was entitled to possession and title, and entered judgment accordingly. In this appeal, appellant contends that the trial court erred by not applying South Dakota's title statutes (SDCL

32–3) and granting him recovery of the car. We affirm.

Briefly, the facts are that appellant turned his car over to Midwest Motors Inc. (Midwest) to sell with the understanding that Midwest would attempt to sell the car at any price they could get and pay appellant $4,000, retaining any excess for themselves as profit. Appellee purchased the car from Midwest for $3,000 cash and $1,795 credit on trade-in. Midwest told appellee that the title would be sent to his lending institution which had loaned him the money. Appellant found out after three weeks that the car had been sold but he received none of the proceeds, whereupon he contacted appellee and demanded return of the car which was refused. Meanwhile, Midwest and its officers had filed for bankruptcy. Appellant then commenced this action seeking recovery of the automobile.

The sole question is whether the South Dakota title statutes, particularly SDCL 32–3–10 and 32–3–11 control over the Uniform Commercial Code (U.C.C.). We hold that they do not.

There is no question that appellant entrusted the car to Midwest in conformity with SDCL 57–5–10. In *Farmers and Merchants Bank, etc. v. Ksenych*, 252 N.W.2d 220 (S.D.1977), when comparing the title statutes and the U.C.C., we stated that the Commercial Code and the title statutes "deal with the same subject matter and when statutes are in pari materia they should be considered concurrently whenever possible. If they can be made to stand together, effect should be given to both as far as possible." 252 N.W.2d at 222. Although that case is factually distinguishable from this case, the general rule of statutory construction applied in that case is equally applicable here.

Numerous other jurisdictions have addressed the identical question presented here under nearly identical facts, and the unanimous consensus of those courts is that the good faith purchaser should prevail. In *Godfrey v. Gilsdorf*, 86 Nev. 714, 476 P.2d 3 (1970), the seller urged that noncompliance with the statutes requiring delivery of a certificate of title precluded the buyer from asserting any ownership rights to the car. The buyer responded that the entrustment provisions of the U.C.C. created an estoppel against the seller to assert title. The buyer stressed the facts that (1) he had bought the car in good faith with no knowledge of ownership rights of a third party, (2) he inquired about the title and received assurance that it would be taken care of, and (3) the seller set in motion the chain of events which led to the sale of the car and should bear the loss incurred from the misconduct of the dealer whom he selected.

The Nevada court noted initially that the purpose of the title statute is to "provide a fast and simple way to determine ownership and to prevent fraud and theft [; thus] strict compliance is essential." 476 P.2d at 5.

> The licensing and registration provisions of the vehicle code are essentially police regulations and strict compliance with them appears to be the prevailing view. (citation omitted) The underlying policy and purpose of that regulatory scheme are best promoted by such a view.

476 P.2d at 6. However, the court went on to state:

> It does not follow . . . that those purposes are subverted by the application of an estoppel theory to a business transaction falling within the entrustment provisions of the U.C.C.

476 P.2d at 6. Consequently, the court held that the seller entrusted his car to a merchant who was empowered to transfer the seller's rights to a buyer in the ordinary course of business, and having done so, the seller was estopped from asserting title against the bona fide purchaser for value and without notice. *See also, Medico Leasing Company v. Smith*, 457 P.2d 548 (Okl. 1969); *Gore v. State*, 260 So.2d 218 (Fla. App.1972); *Greyhound Rent-A-Car, Inc. v. Austin*, 298 So.2d 345 (Fla.1974); *Coffman Truck Sales v. Sackley Cartage Co., Inc.*, 58 Ill.App.3d 68, 15 Ill.Dec. 554, 373 N.E.2d 1026 (1978).

Another case with similar facts which contains an excellent discussion of the issue

is *Levin v. Nielsen*, 37 Ohio App.2d 29, 306 N.E.2d 173 (1973). Interpreting title statutes and commercial code provisions which are very similar to South Dakota's, the court held that the good faith purchaser should prevail. The court concluded that the general rules with regard to the creation of a principal/agent relationship were not abrogated by the title statutes.

> [Pursuant to the Certificate of Title Act], [n]o court may *recognize* title in anyone save one who holds and proves a duly issued certificate of title, or manufacturer's or importer's certificate of origin. . . . But these restrictions do not preclude or nullify the effect of a purported warranty or guaranty of title. (citations omitted) We are not obliged to conclude, *ipso facto*, that no one else is entitled to have title transferred to himself, or that the General Assembly meant to require that automobile purchasers rely solely on a dealer's moral commitment to complete his part of the bargain. The Certificate of Title Act was adopted to protect innocent purchasers, and to allow the public to rely on duly issued evidence of title. It was not meant to, and does not prevent a court of equity from ordering that title be transferred *if the holder has bound himself to do so,* directly or through an agent.

*Levin v. Nielsen*, supra, 306 N.E.2d at 179 (emphasis in original).

Applying the reasoning used in these cases to the facts of the instant case, it does not appear that the facts here require any different result. Appellant presented no evidence that appellee purchased the car in bad faith. Using the general rules of principal/agent law, it is clear that appellant clothed Midwest with apparent authority to sell the car and transfer rights of ownership. Appellant is the party who set in motion the chain of events leading to the title dispute. Moreover, the spirit and intent of the title statutes, which is to prevent fraud through the sale of stolen cars, *Hento v. Melmer*, 73 S.D. 455, 44 N.W.2d 212 (1950), would not be served in a case involving a bona fide purchaser for value without notice. The Commercial Code provisions dealing with entrustment and buyers in the ordinary course of business are clearly applicable to the facts presented here. Therefore, using the rule of in pari materia, the logical result is to give effect to the Commercial Code provisions rather than the title statutes since the latter statutes were not meant to penalize good faith purchasers. By construing the statutes in this manner, both the title statutes and the Commercial Code provisions can be given effect without diminishing the effect of the other.

We affirm the decision of the trial court.

All the Justices concur.