**STATE of South Dakota, Plaintiff and Appellee,**

v.

**William Duane SHORT HORN, Defendant and Appellant.**

No. 16005.

Supreme Court of South Dakota.

Submitted on Briefs April 27, 1988.

Decided July 27, 1988.

Janine Kern, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Robert G. Mines and Andrew B. Reid of Mines Law Office, Hot Springs, for defendant and appellant.

MILLER, Justice.

This is an appeal from the trial court's revocation of probation based upon violation of various conditions imposed by the court. We affirm.

FACTS

William Duane Short Horn (defendant) pleaded guilty to aggravated assault on March 30, 1987. The underlying facts of that charge show that defendant (in a highly intoxicated state) entered a bingo parlor and held a .22 rifle to the head of another person. After the guilty plea, the trial court suspended imposition of sentence and placed defendant on probation for ten years upon several conditions. Among the conditions were good behavior and obey-

ance of all laws, satisfactory completion of alcohol treatment and that defendant not possess any gun, firearm, "or other offensive weapon."

On October 2, 1987, the trial court found that defendant violated the above enumerated conditions, revoked probation and imposed a maximum fifteen-year prison sentence, suspending the last five years of the sentence under similar conditions to those previously imposed.

## ISSUE

### WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REVOKING DEFENDANT'S PROBATION.

Defendant claims that the findings of fact supporting probation revocation are clearly erroneous and that the trial court abused its discretion in revoking probation. Specifically, defendant claims that he successfully completed alcohol treatment, that it is unconstitutional to require alcohol treatment for an alcoholic as a condition of probation, that the condition that he remain on "good behavior" is so vague that it gives the trial court unbridled discretion, and finally, that possession of a pocket knife does not constitute possession of an "offensive weapon."

## DECISION

Recently, in *State v. Herrlein*, 424 N.W. 2d 376 (S.D.1988), we reviewed the basic principles governing probation revocation proceedings. Therein we reiterated that such a proceeding is not a criminal prosecution and that the "reasonably satisfied" standard is applicable. *Herrlein, supra, citing State v. Martin*, 368 N.W.2d 37 (S.D.1985); *State v. Olson*, 305 N.W.2d 852 (S.D.1981); *State v. Burkman*, 281 N.W.2d 442 (S.D.1979). For this court to sustain an order which revokes probation, a factual showing must exist which justifies the exercise of the trial court's discretion. *Herrlein, supra; State v. Elder*, 77 S.D. 540, 95 N.W.2d 592 (1959); *Application of Jerrel*, 77 S.D. 487, 93 N.W.2d 614 (1958). Specifically, in *Elder*, this court stated that

'proof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation. A judge in such proceeding need not have evidence that would establish beyond a reasonable doubt guilt of criminal offenses. *All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.'* (Emphasis added.)

77 S.D. at 544, 95 N.W.2d at 594 (citation omitted); *Burkman*, 281 N.W.2d at 443.

(a) *Whether defendant violated the condition that he exercise good behavior and obey all laws.*

Defendant claims that this probationary condition contemplates future *convictions*, and since he has not been charged with nor convicted of any offense, the trial court's finding of fact is clearly erroneous and no reasonable basis exists therefor.

This court has not specifically defined "good behavior." However, in *Elder, supra,* we stated: "All that is required is that the evidence and facts be such as to reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation." 77 S.D. at 544, 95 N.W.2d at 594 (citations omitted).

■ The trial court's Finding of Fact No. 14 states: "The court finds that the defendant did not remain on his good behavior and obey all laws while at the Human Services Center as a result of his *assaultive and threatening* behavior." (Emphasis added.) While at the Human Services Center (H.S.C.), defendant poked a fellow patient and nearly got into a physical altercation after verbally fighting with another peer. He expressed both manipulative and aggressive behavior towards others. While there, defendant also threatened a staff member, threatened a peer with a chair and, when threatened with a strip search, he surrendered a pocket knife which he had been carrying (in violation of H.S.C. regulations).

We agree with the trial court that defendant's behavior at H.S.C. was "assaultive and threatening." Defendant's behavior was sufficient to demonstrate that (1) he could have been charged or convicted of assault and/or (2) his conduct did not conform to the law. *See generally State v. Allen,* 235 A.2d 529 (Me.1967); *In re Weber,* 75 Ohio App. 206, 61 N.E.2d 502 (1945); *Annot.,* Suspension of Sentence—"Good Behavior," 58 A.L.R.3d 1156, 1162–63 (1974). In *Elder,* we stated that proof supporting a conviction is not required. Although defendant has not been *convicted* of any crimes, we conclude that the trial court did not abuse its discretion in finding that defendant's conduct was not as good as required by the imposed conditions of probation.

(b) *Whether defendant violated the condition of probation which required him to successfully complete an alcohol treatment program.*

■ Defendant admits he did not complete alcohol treatment at the H.S.C., but offers several excuses for this failure. Defendant claims that the adolescent drug and alcohol program was not properly suited to his needs because several of the other patients were younger (some were 14 and 16, while defendant was 20). He also claims that some of the other patients were dealing with drug problems and had different culture experiences than he. (However, he did testify that half of the patients in the program were also Indian.) Mainly, defendant asserts that he did successfully complete an alcohol program because he did not drink for the first seven months of his probation and because he had expressed a desire to continue attending AA meetings and church services when available. Defendant argues that his only violation was that he could not complete a personality reversal as required by the H.S.C.

First, we note that the condition that defendant complete alcohol treatment was the most important condition in the mind of the trial court. At the original sentencing hearing, the trial judge repeatedly warned that alcohol was defendant's main problem and that treatment was absolutely necessary.

Defendant's behavior at the treatment program at H.S.C. was clearly not as good as it should have been. He had a poor attitude, was assaultive, and demonstrated aggressive behavior. Defendant was thus discharged from the program. Further, the fact that several of the other participants were younger than he is immaterial. At age 20, he certainly is not an "old timer" (in the recent past he would not have been considered an adult, and even today a 20–year-old is legally prohibited from purchasing or consuming alcohol). One could hardly assume that the professional personnel at the H.S.C. acted improperly by placing him in treatment with other young people, rather than with middle-aged or elderly alcoholics.

Given defendant's actions and applying them to the *Burkman* standards, we conclude that there was sufficient evidence to justify the trial court's revocation of probation for failure to complete treatment.

■ Finally, defendant's argument that the requirement that he complete treatment for alcoholism violates the Eighth Amendment to the United States Constitution (i.e., such requirement constitutes cruel and unusual punishment) is without merit. Treatment for alcoholism (or any illness) as a condition of probation is not unconstitutional as it is not punishment but rather is a means of necessary rehabilitation. *See State v. Robinson,* 399 N.W.2d 324 (S.D.1987).

(c) *Whether defendant violated the condition of probation by possessing an offensive weapon.*

Defendant argues that ordinary pocket knives are not offensive or deadly weapons. He argues that there was no probationary condition which prohibited the possession of a pocket knife, rather it only prohibited "offensive weapons." Defendant also contends that this probation condition had no reasonable relationship to the crime for which he was convicted.

■ Although we have no statutory definition of "offensive weapon," SDCL 22–1–2(10) defines a "dangerous" or "deadly" weapon as "any firearm, knife or device, instrument, material or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, or by the manner in which it is used is likely to inflict death or serious bodily harm." Black's Law Dictionary defines "offensive weapon" as "occasionally used in criminal law and statutes, a weapon primarily meant and adapted for attack and the infliction of injury, but practically the term includes anything that would come within the description of 'deadly' or dangerous weapon."

■ We conclude that the trial court's determination that a pocket knife was an "offensive weapon," *as contemplated by its own probation order*, was not clearly erroneous. The use of the term "offensive weapon" used by the trial court in its condition of probation was sufficient to notify defendant that he could not conceal objects which by design were capable of causing injury, i.e., guns or knives. Also, defendant knew it was against the rules at the H.S.C. to carry a concealed weapon. Further, this condition certainly had a reasonable relationship to the crime for which defendant was committed because of the dangerous, assaultive nature of the crime.

In conclusion, the trial court was not clearly erroneous in finding violations of probation and did not abuse its discretion in revoking probation.

Affirmed.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

There is no doubt in my mind that appellant's appeal has no merit insofar as he claims the court abused its discretion in revoking his probation. A "reasonably satisfied" platform of proof has been met by the State in several regards.

I am troubled by this appeal from an entirely different aspect, namely, jurisdiction. Jurisdiction, although not raised by either party on appeal or at the trial level, may be addressed by this Court, sua sponte. *State v. Waldner*, 381 N.W.2d 273, 275 (S.D.1986) (citing *State v. Oban*, 372 N.W.2d 125 (S.D.1985); *State v. Huftile*, 367 N.W.2d 193 (S.D.1985)). *Huftile*, 367 N.W.2d at 195, cited *State v. Huth*, 334 N.W.2d 485 (S.D.1983). It is the philosophy, of at least some trial judges in this state, that their jurisdiction is never-ending. Here, this trial judge first imposed probation. This probation resulted from withholding an entry of judgment of guilt and suspending imposition of sentence. Before us, we later find a judgment of guilt being imposed and a simultaneous sentence of fifteen years to the State Penitentiary. This sentence then contains one of these "I shall reach out from the grave to adjudicate" powers. For, you see, after ten years, and mind you, the Executive Branch will have control of the prisoner for ten years, the trial judge placed this appellant upon a "suspended sentence" establishing eleven separate conditions. In other words, this appellant will be answerable to this trial judge (Judicial Branch) some ten years down the road via a suspended sentence of five years, which was an overlay on an executed sentence of ten years. The trial judge in this case seems to direct a determination of complying with the rules and regulations of the South Dakota Board of Charities and Corrections and expressly does so by virtue of condition No. 8. The trial judge directs the appellant to obey the parole officers. Are parole officers, working for the Executive Branch of government, under a trial judge who is in the Judicial Branch of government? I think not.

However, the division of powers has been written upon extensively on the sentencing issue in this Court. Not one citation to any of these cases is alluded to in appellant's brief. A few examples: *Roden v. Solem*, 411 N.W.2d 421 (S.D.1987) (Wuest, C.J., concurring specially); *State v. Waldner*, 381 N.W.2d 273 (S.D.1986);

*State v. Oban,* 372 N.W.2d 125 (S.D.1985); *State v. Huftile,* 367 N.W.2d 193 (S.D. 1985). These are but a few of the writings on sentencing.

"*All* paroled prisoners are under the supervision of the Board of Charities and Corrections." *See* language in *Huftile,* 367 N.W.2d at 195 (emphasis in original) (citing SDCL 24–15–14). "This expressly includes persons on parole *under a suspended sentence.*" *Id.* (emphasis in original). "Uncertainty, if not chaos will result if a parolee is required to satisfy two supervisors; the sentencing court and the Board of Charities and Corrections, each with a different set of restrictions and conditions." *Id.* at 196. This sentence is inherently flawed per the settled law of this state.

Acting Justice Wuest, now Chief Justice Wuest, in concurring in result in *Huftile,* at 197, noted that the State Legislature had amended SDCL 23A–27–19 in 1985. Specifically, the Legislature clarified that the Board of Charities and Corrections retain jurisdiction to revoke a suspended sentence imposed under SDCL 23A–27–18. In 1986, the statute, SDCL 23A–27–19, was amended (1986 S.D.Sess.L. ch. 195) (House Bill 1163), again but did not substantively eradicate the power of the Board to retain jurisdiction to revoke a suspended sentence (with exception of the existing one-year jurisdiction which a trial judge has to alter a sentence). In 1987, this pertinent statute was not amended. However, in 1988, via 1988 S.D.Sess.L. chs. 192 (House Bill 1159) and 193 (House Bill 1088), effective July 1, 1988, the Legislature again changed the statute by substituting "pardons and paroles" for "charities and corrections," substituting "retains" for "shall have and retain," and adding a notice provision, irrelevant to this appeal. Therefore, the Legislature continues to manifest its intent that a trial judge has jurisdiction for a period of one year from the effective date of the conviction, and continues to affirm its declaration that the Board of Pardons and Paroles retains jurisdiction to revoke a suspended sentence. A court services officer can only get into the picture when a defendant has been sentenced to the county jail as a condition of suspended imposition of sentence, suspended sentence, or suspended execution of sentence. SDCL 23A–27–18.2. Visualize the prisoner, who becomes a parolee; he cannot be in both branches at the same time, under dual supervision, and so says our State Legislature, again and again and again. Judge Konenkamp's sentence, *i.e.,* the last five years, is in excess of his jurisdiction and should be struck down even though not one case was cited in the briefs to substantiate that position. As former Chief Justice Fosheim noted in *Huftile,* 367 N.W.2d at 195, "[i]t is the rule in this state that jurisdiction must affirmatively appear from the record and this court is required *sua sponte* to take note of jurisdictional deficiencies, whether presented by the parties or not."