**Charlene TURO, Plaintiff and Appellee,**

**v.**

**Herman SOLEM, Warden of the South Dakota Penitentiary, and Lynne Delano, Warden of the Springfield Correctional Facility, Defendants and Appellants.**

No. 16000.

Supreme Court of South Dakota.

Considered on Briefs May 27, 1988.

Decided Aug. 17, 1988.

---

John T. Hughes of Morman, Smit, Shepard & Hughes, Sturgis, for plaintiff and appellee.

Roger A. Tellinghuisen, Atty. Gen., Pierre, Thomas Harmon, Deputy Atty. Gen., Pierre, for defendants and appellants.

MILLER, Justice.

## ACTION

State appeals an order of the trial court granting Charlene Turo's (Turo) application for a writ of habeas corpus. We reverse.

## FACTS

Turo was placed on three years probation for passing a no account check. Subsequently, Turo's probation was revoked and she was sentenced to serve 18 months in the penitentiary with execution of the latter 12 months suspended on two conditions (neither of which is involved in this appeal). After serving approximately one and one half months in the penitentiary, Turo was released on parole under certain conditions imposed by the Board of Pardons and Paroles. These conditions, unlike those imposed by the sentencing judge on the suspended sentence, included a requirement

that Turo periodically report to a parole agent.

One week before Turo's parole period ended, Turo met with her parole agent. The agent explained to Turo that she was about to go on suspended sentence status and that the conditions of her suspended sentence would be the same as they had been for her parole. Turo also signed a "contract" agreeing to abide by the conditions of her parole and suspended sentence and signifying her understanding that failure to comply with the conditions enumerated in the contract (including the condition that she periodically report to a parole agent) would constitute a violation of her parole *or* her suspended sentence.

In April 1987, Turo's suspended sentence was revoked for her failure to report to a parole agent as directed. Turo was ordered to serve the entire remaining 12 months of her sentence. After revocation of her suspended sentence, Turo applied to the trial court for a writ of habeas corpus which was later granted.

## ISSUE

Whether a suspended sentence may be revoked for violation of conditions of the suspension imposed by the Board of Pardons and Paroles rather than by the sentencing judge?

## DECISION

Resolution of the issue in this case turns on interpretation of the relationship between two statutes, SDCL 23A–27–19 (suspended sentences) and SDCL 24–15–11 (paroles). SDCL 23A–27–19 provides that an offender whose sentence is suspended subsequent to an incarceration in the penitentiary is under the supervision of the Board of Charities and Corrections* and states, "[t]he board is charged with the responsibility for enforcing the conditions imposed [on the suspended sentence] by the sentencing judge." SDCL 23A–27–19 also gives the Board of Pardons and Paroles jurisdiction to revoke a suspended portion

* SDCL 23A–27–19 was amended during the 1988 legislative session to transfer this supervisory responsibility from the Board of Charities and

of a sentence for violation, "of the terms of the suspension." SDCL 24–15–11 permits the Board of Pardons and Paroles to place reasonable restrictions upon a parolee it releases from the penitentiary which are designed to continue the parolee's rehabilitation.

In reaching its decision in this matter, the trial court strictly construed the language quoted from SDCL 23A–27–19 to mean that Turo's suspended sentence could be revoked *only* for a violation of conditions of the suspension which were imposed by the sentencing judge. Since periodic contact with a parole agent was a condition imposed by the Board of Pardons and Paroles and not the sentencing judge, the trial court held that the board had no authority to revoke Turo's suspended sentence. The trial court reasoned that release of an offender under a suspended sentence is separate and distinct from release under parole. Therefore, the trial court concluded that SDCL 24–15–11 allowing the board to place reasonable restrictions upon a parolee released from the penitentiary was inapplicable to Turo's release under a suspended sentence.

The trial court's decision, however, failed to take into account certain jurisdictional principles involved in the suspension of a sentence by a sentencing judge (a member of the judicial branch of government) and parole of an offender by the Board of Pardons and Paroles (an agency of the executive branch of government). These principles are carefully set forth in *State v. Oban*, 372 N.W.2d 125 (S.D.1985). The trial court declined to rely on *Oban* because the case is factually distinguishable from Turo's. Nevertheless, *Oban's* discussion of judicial versus executive jurisdiction over suspended sentences and paroles cannot be ignored in resolving the issue now before this court.

■ Oban recognizes that suspended sentences and paroles are alike in practice. *Oban*, 372 N.W.2d at 127–128. Both in-

Corrections to the Board of Pardons and Paroles. 1988 S.D. Laws ch. 192.

volve the release of an offender from the penitentiary prior to expiration of the full term of the offender's sentence. However, Oban stresses that suspended sentences and paroles are distinct and separate legal concepts. *Id.* at 128. The distinction between the two flows primarily from the separate jurisdictional authority exercised by a sentencing judge in suspending execution of a sentence and by the Board of Pardons and Paroles in granting a parole. *Id.* at 128–129.

■ Circuit court judges do not have inherent jurisdictional authority to suspend a sentence. *Oban,* 372 N.W.2d at 128. Suspended sentences are in the nature of a pardon which is an *exclusive* executive, not judicial power. *Id.* Judicial authority to suspend sentences arises solely from an amendment to the state constitution and subsequently enacted statutory provisions. *Id.* at 129. Furthermore, once an offender is within the jurisdiction of the executive branch after commencing service of a sentence, the judicial branch loses jurisdiction and control. *Id.* at 129 *citing State v. Huftile,* 367 N.W.2d 193 (S.D.1985). Thus, when an offender is released from the penitentiary either under a parole or under a suspended sentence, the offender is under the supervision of the executive branch of government. *Oban,* 372 N.W.2d at 130.

■ Given the jurisdictional predominance of the executive branch over the supervision of offenders released from the penitentiary, we find that the trial court erred in strictly construing the language of SDCL 23A–27–19 (suspended sentences) against the Board of Charities and Corrections (an executive branch agency). The provision of SDCL 23A–27–19 requiring the board to enforce the conditions of a suspended sentence imposed by a sentencing judge should not be read as limiting the power of the board to place additional restrictions on the release of an offender (SDCL 24–15–11) in the exercise of its executive branch jurisdiction. Rather, the provision is more properly viewed as a recognition of the jurisdiction of the executive branch over the supervision of offenders released from the penitentiary. SDCL 23A–27–19 (suspended sentences) merely gives a sentencing judge the authority to have the conditions he places on a suspended sentence enforced by the Board of Charities and Corrections in addition to restrictions the board may place on the release of the offender under SDCL 24–15–11. To hold otherwise by following the interpretation of the trial court results in an intrusion by the judicial branch of government upon the jurisdiction of the executive branch.

Moreover, the above interpretation of the relationship between SDCL 23A–27–19 (suspended sentences) and SDCL 24–15–11 (parole) gives concurrent effect to both statutes and makes them stand together as required by the rules of statutory construction. *Island v. Warkenthien,* 287 N.W.2d 487, 488 (S.D.1980) *citing Farmers and Merchants Bank, etc. v. Ksenych,* 252 N.W.2d 220, 222–223 (S.D.1977). So long as the conditions of release imposed by the Board of Pardons and Paroles are reasonable and consistent with those imposed on a suspended sentence by a sentencing judge, there is no conflict between the statutes and one need not be given dominant effect over the other.

■ In this instance, the condition that Turo periodically report to a parole agent during the suspended portion of her sentence was both reasonable and consistent with the conditions of suspension imposed by the sentencing court. We note that the record in this case reflects that Turo's original sentence of probation required her to serve under the supervision of a court services worker who, as a condition of probation, required Turo to make periodic reports. Thus, little argument can be made that Turo was unfamiliar with the reporting requirement or that it was at odds with the objectives of the sentencing judge.

Accordingly, the trial court order granting Turo's application for a writ of habeas corpus is reversed.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (concurring specially).

In concurring with this reversal, I refer to my writing, concurring in part and dissenting in part, in *State v. Short Horn*, 427 N.W.2d 361, 364 (S.D.1988), which I conceptually believe supports this decision.

After a circuit court has lost jurisdiction, it is obvious the parole agent, not to mention the Board of Pardons and Paroles, needs authority to impose legal and reasonable conditions when a prisoner is released on the suspended portion of a split sentence. Under *State v. Oban*, 372 N.W.2d 125 (S.D.1985), the Board of Pardons and Paroles supervises persons serving the suspended portion of a split sentence.

This state needs a degree of uniformity in the administration of law and we cannot have a judge setting forth certain conditions and a parole board setting forth different conditions. What branch is the prisoner in? *Oban* laid this to rest in 1985. We held there that the suspended portion of Oban's sentence could be revoked by the Board of Pardons and Paroles for a violation of a condition imposed by the prisoner's parole officer. And we stated: "[H]e was still on parole by virtue of the suspended portion of the gubernatorial commutation. The circuit court had long lost jurisdiction.... Since appellant was still on parole, he was still bound by the terms and conditions of his parole agreement and the appropriate authority can revoke his parole for violation of its conditions." *Oban*, 372 N.W.2d at 131. Also: "A penitentiary inmate is accordingly eligible for release either by the Board of Charities and Corrections [Board of Pardons and Paroles], SDCL 24-15-8, or a suspended sentence from the trial court. Via either route, the inmate becomes a parolee under the supervision of the Board of Charities and Corrections." *State v. Huftile*, 367 N.W.2d 193, 196 (S.D.1985).

Appellant is raising an issue which is of recent stare decisis in South Dakota.

Let us touch upon policy, ever so briefly. The Board and parole agents are on top of the personal conduct of a prisoner; the sentencing judge is not. These trial judges cannot reach out from the grave, as I said in my writing in *Short Horn* (427 N.W.2d at 364), to adjudicate and hold on to these prisoners ad infinitum. *See also Oban; Huftile*. As I stated in my *Short Horn* writing, and point out again, a trial judge loses his jurisdiction after one year from imposition of a sentence to the State Penitentiary. SDCL §§ 23A-27-19, 23A-31-1. The circuit court loses jurisdiction after one year. *Oban; Huftile*. However, an illegal sentence can be modified or changed after the year expires under *State v. Tibbetts*, 333 N.W.2d 440 (S.D.1983). Not only does sound public policy favor allowing the parole board to impose legal and reasonable conditions on prisoners who are released on the suspended portion of a split sentence, but our state statutes and settled law of this state require it. See also the majority opinion of former Chief Justice Jon Fosheim in *State v. Huftile*, 367 N.W.2d at 195, wherein he stated: "*All* paroled prisoners are under the supervision of the Board of Charities and Corrections." (Emphasis in original.) And our former Chief Justice also wrote: "This expressly includes persons on parole *under a suspended sentence.*" *Id.* (emphasis in original). Our former Chief Justice was concerned with overlapping-dual functions which could trigger uncertainties and confusion, for he wrote: "Uncertainty, if not chaos will result if a parolee is required to satisfy two supervisors; the sentencing court and the Board of Charities and Corrections, each with a different set of restrictions and conditions." *Id.* at 196.

Lastly, this prisoner agreed to a "parole agreement," which contained a reporting requirement. This reporting requirement was to report to a parole officer. She cannot be heard to complain about conditions that she has expressly agreed to. *State v. Whalen*, 367 N.W.2d 186 (S.D. 1985); *State v. Reinke*, 298 N.W.2d 816 (S.D.1980); *State v. Jackson*, 272 N.W.2d 102, 104 (S.D.1978). It was error for the trial court to hold that the parole board could not impose conditions upon a person

serving a suspended portion of a split sentence and that only the sentencing judge could enforce the conditions which he, himself, originally imposed.