STATE ex rel CALDWELL, Plaintiff, v. SKINNER, Judge, et al, Defendants.

(238 N. W. 149.)

(File No. 7314.   Opinion filed October 5, 1931.)

*T. R. Johnson,* of Sioux Falls, for Plaintiff.

*C. G. Aaberg,* State's Attorney, of Brookings, for Defendants.

CAMPBELL, J.   Relator Veva Caldwell, who sufficiently alleges that she had not previously been convicted of crime under the laws of this state, was informed against in the circuit court of Brookings county, S. D., for the offense of "assault with intent to commit robbery," and being duly tried, was convicted by the verdict of a jury, and on February 20, 1929, by judgment of said court duly made and entered was sentenced to a term of five years in the penitentiary.   Her motion for new trial having been thereafter denied, relator appealed to this court, which affirmed the judgment of the trial court (State v. Caldwell, 58 S. D. 246, 235 N. W. 649), and relator's application for rehearing was by this court denied on September 5, 1931, and the remittitur in said cause thereupon went down to the circuit court of Brookings county.   On September 11, 1931, and before the relator had been taken into custody for the purpose of entering upon the service of the sentence imposed upon her, she applied to the judge of the circuit court who had originally tried the case, asking an order granting probation or suspension of sentence pursuant to chapter 126, Laws 1931, which had become effective July 1, 1931.   The learned trial judge denied the application of the relator, and relator alleges that he denied the same "upon the express ground that the said court and the judge thereof had no authority to entertain said application or to grant probation thereon after appeal by the said defendant from its foregoing judgment and sentence and after the affirmance thereof by the Supreme Court of the State of South Dakota." Relator does not allege (other than by such inference, if any, as may be drawn from the above allegation) that he in any manner stated or announced that he would either hear or grant said application if he thought he had jurisdiction so to do.

Under these circumstances, relator applied to this court for an alternative writ of mandamus directing the said trial judge to show cause why he should not hear, entertain, and act upon the application of relator for probation.   The alternative writ issued

out of this court on September 15, 1931, directing that cause be shown before this court on September 28, 1931, and incorporated therein was an order to the effect that all proceedings for the commitment of the defendant and enforcement of the sentence and judgment of the trial court be stayed and enjoined pending the further order of this court. Defendants ask denial of the writ and dismissal of the proceeding.

The matter was duly submitted to this court on the date fixed for hearing, without oral argument, and is now for our decision.

The first statute in this state purporting to authorize suspension of sentence, probation, or parole by a trial judge in the sense in which those phrases are currently employed was chapter 163, Laws 1913, subsequently amended by chapter 153, Laws 1923, by limiting its application to first offenders and barring entirely from any benefits under the act persons sentenced to jail for violation of the intoxicating liquor laws. This suspended sentence law had the consideration of this court in State ex rel. Payne v. Anderson (1921) 43 S. D. 630, 181 N. W. 839; State ex rel. Horner v. Taylor (1923) 47 S. D. 124, 196 N. W. 494; State ex rel. Callahan v. Hughes (1925) 48 S. D. 95, 202 N. W. 285; Ex parte Dunn (1926) 50 S. D. 48, 208 N. W. 224; and Friske v. Circuit Court (1927) 51 S. D. 415, 214 N. W. 812. The net result of those decisions was in substance a judicial determination that the Legislature had exceeded its constitutional authority in attempting to confer upon courts or judges the powers undertaken to be granted by chapter 163, Laws 1913.

Thereafter there was submitted to the people of this state by chapter 83, Laws 1929, a proposed amendment to add to article 5 of our Constitution a new section numbered 39 to read as follows: "Section 39. The Legislature may empower all Courts having jurisdiction to try offenses under the laws of this State, and the Judges thereof, to suspend sentences of persons convicted, for the first time, of crime under the laws of this State, during good behavior, and subject to such conditions and restitution as the Court or the Judge thereof may impose," which proposed amendment was voted upon and carried at the November, 1930, general election by an affirmative vote of 81,697 over a negative vote of 76,358.

At the next session of the Legislature, pursuant to the consti-

tutional authority thus established, there was enacted chapter 126, Laws 1931, the law now invoked by relator, providing as follows: "All Courts, having jurisdiction to try offenses under the laws of this State, and the Judges thereof, shall have power to suspend sentences of persons convicted, for the first time, of crime under the laws of this State during good behavior, subject to such conditions and restitutions as the Court or Judge thereof may impose; provided, however, that such conviction shall have occurred in the Court exercising such power."

A reading of the statute in question, a consideration of prior legislation and decisions in this state, and an examination of relator's application, immediately present to any inquiring mind a number of interesting speculations.

The statute reposes in the courts and judges the power "to suspend sentences." An initial inquiry at once arises as to the meaning of this phrase. Does it mean that power is granted to suspend and defer the pronouncement and imposition of sentence? Or does it mean that power is granted to suspend the operation and execution of a sentence after the same has been pronounced and imposed? Or is the phrase applicable indifferently to either or both of such situations? Again, assuming that the phrase "to suspend sentence" means, or at least includes, suspension of the operation and execution of a sentence after pronouncement, does the law have application to a sentence legally, definitely, and unconditionally imposed and pronounced at a time prior to the effective date of the law? Assuming that power to suspend a sentence is power to suspend the execution thereof, what, if any, are the limits to the exercise of such power? Must the power to suspend execution of a sentence be exercised at the time of the pronouncement of the sentence? If not, at what point of time subsequent to the pronouncement of a sentence does the power to suspend the execution thereof terminate? More specifically, assuming that the power to suspend a sentence is the power to suspend the execution thereof after pronouncement, and assuming that the power may be exercised in relation to a sentence pronounced prior to the effective date of the law, can such power still be exercised after the convicted defendant has appealed and the judgment of conviction has been affirmed and the cause remanded for enforcement of the judgment pursuant to section 5047, Rev. Code 1919?

We think it is unnecessary for us in this proceeding, however, to pursue any of the inquiries above suggested. Assuming a resolution of all of those questions most favorable to the relator (while expressly stating that by such assumption we do not intend to determine such questions or any of them, or to express inferentially or otherwise any opinion relating to the proper determination thereof), we are nevertheless of the view that relator's request for the mandate of this court must be denied.

■■ Mandamus in its origin and history is prerogative in character. It will issue, under our statutes, "to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station * * *" (section 3006, Rev. Code 1919), when there is not a plain, speedy, and adequate remedy in the ordinary course of law (section 3007, Rev. Code 1919). The purpose of mandamus is to compel affirmative action, and it is elementary law that before mandamus can properly issue at least three factors must coexist in the situation: First, the person or tribunal against whom the writ is sought must have *power* to perform the act desired; second, such person or tribunal must be under a clear *duty* to perform such act; and, third, the relator must have a clear legal *right* to the performance of the act which is sought to be compelled. The coexistence of these three factors will not always suffice, standing alone, to justify the issuance of the writ, but lacking any one of them the writ can never properly issue.

In the present proceeding relator asks this court to issue its mandate requiring and directing the learned circuit judge to entertain and exercise his discretion upon relators application for suspension of sentence under the authority of chapter 126, Laws 1931. Assuming such a construction of chapter 126, Laws 1931, as would repose in the circuit court or judge a power to suspend relator's sentence under the facts and circumstances appearing in this record (but, we repeat, expressly refraining from determining that point or expressing any opinion whatever in relation thereto), we nevertheless fail to find either of the two other essential elements to the issuance of the writ, to wit, a clear duty upon the part of the judge to exercise such power, or a legally enforcible right upon the paart of the relator to have the same exercised.

The fundamental theories of criminology and the administra-

tion of criminal law have appreciably changed since the days of which Sir James Stephen could say with a considerable degree of truth that the then criminal law of England was "mainly a system of licensed revenge." Laws permitting probation, parole, indeterminate sentence, suspension of sentence, etc., are manifestations of a comparatively modern shift in criminological theory; the trend being away from the rule of so-called "strict law" which demanded a fixed and positive penalty for every crime and the infliction thereof in every case to which it might be applicable, and toward the theory that some degree of discretion should be vested in a judge, probation officer, or other board or body, permitting an adjustment of the penalty to the character of the particular criminal and the circumstances of his individual case. This latter method has come to be known to criminologists as "individualization of punishment," and its real foundation lies, not in the desire to deal kindly or charitably with an individual defendant, not in humanitarianism or sympathy, but primarily in the belief that the welfare of the state and of organized society will be better served by adjusting the treatment of the criminal to his character and the circumstances of his crime rather than to the mere nature and classification of the crime itself. Benefit to the individual criminal is incidental. It is a mere means to an end. The chief end is the welfare of society. It is conceived that in many cases, particularly with first offenders, by such measures the incipient development of a criminal character may be aborted and society thereby relieved; that his reformation may be accomplished and he may become a useful member of society rather than a perpetual menace, burden, and expense to society as a chronic criminal offender. The powers given under such laws are intended to be exercised as stated, for example, in the Federal Probation Act (March 4, 1925, c. 521, § 1, 43 Stat. 1259 [U. S. Code Ann. tit. 18, § 724]), " * * * when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby. * * *"

It may be admitted that efforts toward individualization of punishment have not yet attained any really scientific basis, and in actual operation at the present time laws permitting suspension of sentence may constitute little more than "a selective process based on such knowledge of human nature and on such philos-

ophy of life as the individual judge may happen to be endowed with." The fact remains that the design and purpose of such laws are to permit the exercise of a discretion for the welfare of society, and not to create any vested or legal right in a defendant guilty by plea or conviction. We are convinced that the Legislature did not intend by the enactment of chapter 126, Laws 1931, to create any legal rights on the part of defendants which did not theretofore exist. The entire matter is left to the discretion of the court with the expectation and intention that the granted power shall be exercised primarily for the benefit of organized society, and only incidentally for the benefit of any particular defendant. The power granted is not inherently a judicial power (Ex parte U. S. [1916] 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355; State ex rel. Payne v. Anderson [1921] 43 S. D. 630, 181 N. W. 839), and it required a specific constitutional amendment to permit the Legislature to vest such nonjudicial power in the courts and judges. The matter is committed by the statute entirely to the discretion of the trial court or judge. Whether that discretion might, under some circumstances, be subject to review if exercised in favor of suspension is a point upon which we express no opinion, but certainly it is not subject to review when exercised against suspension. No provision is made in our statute (as it is in some statutes relating to suspension, probation, and parole) for any application by the defendant to the trial court for suspension of sentence. We do not think the Legislature by chapter 126, Laws 1931, intended to create and vest in every defendant in a criminal case a legal right, after plea of guilty or conviction, to have a hearing upon an application for suspension of sentence. Neither do we think the Legislature intended to impose upon the trial judge the duty of hearing such application on the part of the defendant in every case. The trial judge may act in the matter entirely upon his own motion, or if he sees fit he may doubtless act upon the suggestion or request of either the defendant or the state; but the entire matter is intrusted to his discretion. He may in his discretion refuse in any case to suspend sentence, and it is equally discretionary with him, we think, whether or not he will hear and entertain an application for suspension. So far as any individual defendant is concerned, suspension of sentence is a mere act of grace. He has no legal right

under our statute either to be granted suspension or to apply therefor and be heard. If the Legislature desires to vest such legal right in defendants in criminal cases, it will be very easy of accomplishment; but in the 1931 law we find no evidence of such legislative intent. "The second and more fundamental reason [for denying mandamus] is that we do not think this court can exercise any compulsion over the District Courts in this subject-matter. In our judgment the act does not contemplate that requests to be put on probation should be the subject of formal applications, hearings, and orders, until there may be an order granting. We think, rather, that the power is to be exercised by the court upon its own motion, and only as a matter of extraordinary grace justified by extraordinary circumstances. The exercise of the power is plainly and purely discretionary. If probation is refused, it cannot concern this court whether the reason for the refusal is good or bad. Doubtless the District Courts will permit suggestions on the subject, in cases where the matter has not been fully considered in imposing sentence; but they cannot permit formal or extended hearings without assuming a burden which would be very great, and which we do not believe was intended by the statute." Evans v. District Judge (C. C. A. 6th Ct. 1926) 12 F. (2d) 64, 65. Cf. also In re Gilbough (C. C. A. 2d Ct. 1926) 13 F. (2d) 462; Green, Moore & Co. v. United States (C. C. A. 5th Ct. 1928) 29 F. (2d) 740.

We think it is always in the discretion of the trial court or judge to fail or refuse to suspend sentence, and we think it lies equally in his discretion as to whether or not he will listen to an application therefor. The matter being entirely discretionary, and there being no legal duty on the part of the court or judge to act, and the defendant in the criminal case having no vested or legal right to have him act, reasons assigned for denial of suspension or for refusal to hear an application for suspension become entirely immaterial.

We are persuaded that relator has failed to establish any legal right to the relief sought. The order of this court will be that the peremptory writ be denied, that the alternative writ heretofore issued be quashed, and that the stay order embraced therein be vacated and set aside.

POLLEY, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.