THE STATE OF OHIO, APPELLEE, v. BREWER, APPELLANT.

(No. 3019—Decided October 15, 1944.)

Mr. C. G. L. Yearick, for appellee.
Mr. W. P. Barnum, for appellant.

CARTER, J. On or about June 29, 1943, a special grand jury of Mahoning county returned an indictment against Blaine Brewer, defendant, appellant herein, which indictment contained two counts charging vio-

lation of Section 13062, General Code; the first count charging keeping a record of wagers on horse races, and the second count with keeping a room with books and papers for recording wagers on such races.

On October 6, 1943, defendant was arraigned and pleaded not guilty. Later, on October 18, 1943, he withdrew his plea of not guilty and entered a plea of guilty. Thereupon the court fined him $250 on each count, together with costs, and further sentenced him to the county jail for thirty days on each count. The jail sentence was suspended on payment of fine and costs and during future good behavior.

On May 23, 1944, which was approximately seven months subsequent to the sentencing and suspension of execution, Brewer was arrested by the police of the city of Youngstown for possessing paraphernalia used in gambling, to which charge he later pleaded guilty and was fined $500 and costs. On June 15, 1944, he was cited to appear before the common pleas judge who had imposed the sentence hereinbefore referred to, and on motion of the assistant attorney general the court, on June 19, 1944, revoked the order of suspension and ordered that he be committed to the county jail, in accordance with the original sentence, for breach of the suspension terms. On hearing before the court to set aside and vacate the stay of execution Brewer objected to the jurisdiction of the court and to the introduction of evidence. After the court had ordered the order of suspension of sentence vacated and held for naught and had committed Brewer to the county jail, a motion for new trial was filed, which motion was overruled by the court and exceptions were noted.

Appeal is prosecuted to this court, it being urged that, at the time of the revoking of the order of suspension and ordering into effect the original jail sentence, the court was without jurisdiction to order such

imprisonment; that the imposition of the jail sentence is contrary to law; and that the imposition of the jail sentence as ordered by the court is in violation of defendant's rights as guaranteed to him by the Constitution of the state of Ohio and the Constitution of the United States.

The court made the following entry at the time of the plea of guilty by defendant: That defendant pay a fine of $250 on each count of the indictment and the costs of prosecution, and stand committed to the jail of Mahoning county until such fine and costs are paid or until otherwise discharged by due process of law; that defendant be confined and imprisoned in the county jail of Mahoning county, Ohio, for a period of 30 days on each count of the indictment; that for good cause shown the execution of the sentence of imprisonment is suspended upon the future good behavior of the defendant, and upon condition that defendant pay such fine and costs of prosecution herein; and that defendant is allowed until November 15, 1943, to pay the fine and costs.

The record discloses no objection or exception was taken at the time of the original sentence, or to the terms of the suspension of execution. There were exceptions stated in the journal entry wherein the revocation of the suspension of execution was granted and the jail sentence was put into effect.

In 24 Corpus Juris Secundum, 183, the author states:

"In granting a suspension of sentence or probation the court may impose such reasonable conditions as it may deem fit, and if accused accepts such conditions he is bound to comply therewith.

"Among the conditions that have been held legal and proper, are that the one who has been granted a suspended sentence or probation, shall leave the state or country, maintain good behavior, violate no law,

pay the cost of trial, make restitution to the government, or make payments to the person who has suffered loss, damage, or injury as a direct consequence of the crime.''

Further it is stated on page, 185:

''Duration of the suspension or probation period is generally controlled by statute, and within the statutory limits is largely within the discretion of the court.''

Suspension of sentence or, more properly stated, staying of execution in criminal cases such as in the instant case, is purely statutory in Ohio. We need not, therefore, concern ourselves as to what the common law provided as to the inherent power of courts to suspend execution of sentence. Our Supreme Court has settled the question in the case of *Municipal Court of Toledo* v. *State, ex rel. Platter,* 126 Ohio St., 103, 184 N. E., 1, the third paragraph of the syllabus reading as follows:

''The trial courts of this state do not have the inherent power to suspend execution of a sentence in a criminal case and may order such suspension only as authorized by statute.''

In the case of *Madjorous* v. *State,* 113 Ohio St., 427, 149 N. E., 393, the court says:

''The Ohio Legislature having dealt with the subject, and having made certain provisions and certain exceptions thereto, it will be presumed that the Legislature has exhausted the legislative intent, and that it has not intended the practice to be extended further than the plain import of the statutes already enacted.''

We are, therefore, forced to the conclusion that the trial courts of this state have no inherent power to suspend execution of sentence in criminal cases, and that such courts may do so only when authorized by statute.

In 1933 and shortly after the decision of the Supreme Court of this state in the case of *Municipal Court of Toledo* v. *State, ex rel. Platter, supra,* the Legislature enacted Section 13451-8*b*, General Code (115 Ohio Laws, 543). This section provides:

"Any court sentencing a person for misdemeanor forbidden by statute or ordinance, may at the time of sentence remit the same or suspend such sentence in whole or in part, upon such terms as he may impose."

This section applies to misdemeanor sentences only. It will be observed that the statute provides that the court in such cases may suspend such sentences in whole or in part upon such terms as he may impose. What were the terms the court imposed as a condition to the suspension of the execution of the jail sentence? It was upon the future good behavior of the defendant and the payment of fine and costs. The fine and costs have been paid. There is no claim made that this enactment is unconstitutional. If that were urged and such would be held to be the case it would afford Brewer no comfort. We are therefore assuming this section to be a valid enactment, and therefore what action the court took basing that action under this statute was proper. This statute vests a discretion in the trial court in fixing suspension terms. There was no definite period of time fixed by the court during which the suspension was to continue; it was during future good behavior. Under the statute it was not necessary that the court fix any definite period of time.

In the case of *State, ex rel. Clum, Dir. of Law,* v. *Municipal Court of Cleveland,* 132 Ohio St., 147, 5 N. E. (2d), 489, the second paragraph of the syllabus in part provides:

"Such section, while it authorizes the trial court to suspend execution of sentence at the time of its im-

position, does not require the court to specify the exact time or duration of such suspension.''

The real question raised, and which has given us some concern, is how long a period, under this section, must elapse from the time of imposition of sentence and stay of execution thereof before such suspension of execution may be revoked for breach of the terms of suspension and the original sentence imposed? A perusal of authorities throughout the United States indicates a divergence of opinion on this question. Some courts hold that, a definite period not having been fixed, a stay is tantamount to holding a sentence *in terrorem* over the head of a prisoner to secure future good behavior, and that such stays involve the exercise of the power to pardon, to commute penalties, and to relieve from the sentences imposed as punishment for crime, which power has not been given to the courts but confided exclusively in the executive branch of government. On the other hand it has been held that since the great end of punishment is not the expiation or atonement of the offense committed, but the prevention of future offenses of the same kind, courts ought to possess the power within certain limits to suspend the execution of a sentence during good behavior, and it is accordingly held that a court has power to stay the execution of a sentence during good behavior or under other similar conditions. 15 American Jurisprudence, 145, 146, Section 494. See, also, 15 American Jurisprudence, 138, Section 483, under the subject of suspension of execution of sentence during good behavior.

A perusal of the numerous cases examined indicates that many cases are so determined due to local statutes, that others deal with the inherent power of courts to suspend execution of sentence, and that others construe the common law rule as to the power of courts to

suspend the execution of sentence. As hereinbefore indicated the right of trial courts to suspend the execution of sentence in misdemeanor cases is statutory in Ohio. We have searched the authorities in an attempt to locate a situation such as presented in the instant case, and have found some authorities bearing on this question. In the case of *Weber* v. *State,* 58 Ohio St., 616, 51 N. E., 116, which decision was rendered prior to the enactment of the above cited statute, the court held:

"In a criminal case the court has the power to suspend the execution of the sentence, in whole or in part, unless otherwise provided by statute; and has power to set aside such suspension at any time during the term of court at which sentence was passed. Whether such suspension can be set aside at a subsequent term is not decided."

However, the court in the course of its opinion stated:

"The suspension being in favor of the prisoner, is for his benefit, and is valid whether consented to by him or not. When the suspension is upon conditions expressed in the judgment, the prisoner has the right to rely upon such conditions, and so long as he complies therewith the suspension will stand.

"But when the suspension is without express conditions, as in this case, it is within the power of the court to set aside the suspension at any time during the same term, on its own motion, and to order the sentence to be executed."

In the case of *Matter of Hart,* 29 N. D., 38, 149 N. W., 568, L. R. A. 1915C, 1169, decided by the Supreme Court of North Dakota in 1914, that court held:

"The exclusive power to grant commutations and pardons is vested by article 3 of the amendments to the Constitution of North Dakota in the board of pardons.

"Where the court suspends a jail sentence for an indefinite period, under the provisions of chapter 136 of the Laws of 1913, such suspension may be revoked and the defendant imprisoned even after the period of the sentence has expired."

This was a case in which the jail sentence was suspended. The court in passing upon the issues involved states the issues thus:

"The question to be resolved in this case is whether, after an order suspending a jail sentence on which no commitment has been issued, and six months after the period of that sentence has expired, the court which imposed the sentence and suspended the same may revoke the order, and order the commitment of the defendant, and require her to serve out the original jail sentence. The statute under which the sentence was suspended * * * reads as follows:

: "" * * * 'where it appears that the public welfare does not demand or require that the defendant shall suffer the penalty imposed by the law, said court or magistrate may suspend the execution of the sentence or may modify or alter the sentence imposed in such manner as to the court or magistrate, in view of all the circumstances, seems just and right.' "

There is a lengthy discussion to be found in this case relating to suspension and revocation of stays of execution in criminal cases. In the closing paragraph of the case the court stated:

"If the defendant has neglected to take advantage of the opportunity offered, she has herself only to blame, and cannot complain if the order is afterwards revoked."

In the case of *Ex parte Lucero,* 23 N. M., 433, 168 P., 713, L. R. A. 1918C, 549, decided by the Supreme Court of New Mexico in 1917, the court followed the holding in a former case that the fact the time covered by the

sentence had expired was immaterial, and that the sentence might be enforced at any time thereafter upon breach of the conditions upon which it was suspended.

In the case of *State, ex rel. Tingstad,* v. *Starwich,* 119 Wash., 561, 206 P., 29, decided by the Supreme Court of Washington in 1922, the court held that on violation by a convicted person of the terms upon which a sentence of imprisonment was suspended, under Laws 1921, p. 204, he may be required to serve it, although the period of the original sentence has expired.

In that case the defendant pleaded guilty to the charge of vagrancy, and was sentenced to serve a term of six months in the jail of that county, but the sentence was suspended during good behavior and until further order of the court. More than six months after the entry of judgment the court was petitioned to set aside and vacate so much of the judgment as was suspended. The court in that case observed:

"The courts are in irreconcilable conflict on the question whether the trial court, in a criminal case, has power to suspend the execution of a sentence where there is no statute authorizing such action. Some courts hold that, in the absence of a statute, any action of the court suspending the execution of a sentence is void and of no effect, while other courts hold that the court passing the sentence has an inherent right to suspend it for an indefinite time."

The court then observed that it was not necessary to discuss this question because of a statute in that state which among other things provides:

"* * * the court may in its discretion, at the time of imposing sentence upon such person, direct that such sentence be stayed and suspended until otherwise ordered by such court, and that the sentenced person be placed under the charge of a parol or peace officer."

The court, later in the opinion, stated:

"* * * The appellant argues that, in any event, he cannot be committed after the expiration of the period of the original sentence, because to so hold would authorize the court at any and all times to enforce its sentence, thus hanging it over him all the days of his life. This, however, is no valid argument in support of his position. He cannot wipe out the sentence lawfully imposed upon him without paying the penalty. If he does not wish to have the sentence hang over him he has a perfect right to refuse the clemency of the court and serve his time. The very purpose of permitting the court to suspend the operation of the sentence is to give the defendant an opportunity thereafter to comport himself with good behavior. If he does not do so, he cannot complain if he is required to serve the sentence. It is true there are a few cases which seem to hold to the contrary, but in the light of the purpose of our statute authorizing the court to suspend sentence, we cannot follow those cases."

In the case of *State* v. *Zolantakis,* 70 Utah, 296, 259 P., 1044, 54 A. L. R., 1463, decided by the Supreme Court of Utah in 1927, the court held:

"One whose sentence is suspended during good behavior, without reservations, has vested right to rely thereon, so long as such condition is complied with; purpose of Laws 1923, c. 74, permitting suspension of sentence, being reformatory."

The statute in that state provides:

"Upon conviction of any crime or offense if it appears compatible with the public interest the court having jurisdiction may suspend the imposition or the execution of sentence and may place the defendant on probation for such period of time as the court shall determine."

The court in that case cited 16 Corpus Juris, 1335, Section 3141, wherein the author states:

"A court having power to make an order suspend-

ing the execution of its judgment in criminal cases, necessarily, upon violation of such order, has the power to revoke the same and to enforce the original judgment by commitment; and such right is not impaired or limited by the passing of the term in which such suspension is made. Where, however, the suspension is upon conditions expressed in the judgment, the prisoner has the right to rely upon such conditions, and so long as he complies therewith the suspension will stand.''

The court cites as authority *Weber* v. *State, supra.* In the course of the opinion the court stated:

''It must be assumed that when the trial court stated the sentence should be suspended during good behavior it meant just what was said, when, as in the instant case, nothing in the sentence indicates otherwise.''

We think the reasoning as expressed in the case of *State, ex rel. Caldwell,* v. *Skinner,* 59 S. D., 68, 238 N. W., 149, is sound, and no doubt our Legislature had such theory in mind in the enactment of Section 13451-8*b*, General Code. The court in that case stated:

''The fundamental theories of criminology and the administration of criminal law have appreciably changed since the days of which Sir James Stephen could say with a considerable degree of truth that the then criminal law of England was 'mainly a system of licensed revenge.' Laws permitting probation, parole, indeterminate sentence, suspension of sentence, etc., are manifestations of a comparatively modern shift in criminological theory; the trend being away from the rule of so-called 'strict law' which demanded a fixed and positive penalty for every crime and the infliction thereof in every case to which it might be applicable, and toward the theory that some degree of discretion should be vested in a judge, probation officer, or other board or body, permitting an adjustment of the penalty to the character of the particular crim-

inal and the circumstances of his individual case. This latter method has come to be known to criminologists as 'individualization of punishment,' and its real foundation lies, not in the desire to deal kindly or charitably with an individual defendant, not in humanitarianism or sympathy, but primarily in the belief that the welfare of the state and of organized society will be better served by adjusting the treatment of the criminal to his character and the circumstances of his crime rather than to the mere nature and classification of the crime itself. Benefit to the individual criminal is incidental. It is a mere means to an end. The chief end is the welfare of society. It is conceived that in many cases, particularly with first offenders, by such measures the incipient development of a criminal character may be aborted and society thereby relieved; that his reformation may be accomplished and he may become a useful member of society rather than a perpetual menace, burden, and expense to society as a chronic criminal offender.''

We are inclined to the latter view, that the Legislature which is the sole source of authority to authorize suspension of execution of sentences may provide that the court may suspend the execution of a sentence on such terms as such court may impose. In other words, the Legislature of this state has authorized the trial judge to exercise certain discretionary powers relative to the suspension of sentences at time of imposition. Now under such a suspension of execution as in the instant case, when may the suspension be revoked and the sentence pronounced be carried into effect? By the weight of authority a statute is not unconstitutional because it confers on a court the power to suspend a sentence indefinitely in the discretion of the court. A minority hold otherwise. 15 American Jurisprudence, 149, Section 499. It appears to us that if courts are granted the power to suspend indefinitely

or during good behavior the court has the right to revoke such suspension on breach of such terms as imposed and carry the original sentence into execution as long as no time limit is provided by statute or in the terms imposed.

It is claimed by counsel for defendant that the revocation must be within a reasonable time following the imposition and suspension of execution, and if not done within a reasonable time the jurisdiction to enforce the sentence is lost. Looking to the statute we find no period of time fixed as the duration of the suspension of execution, and we are of the view that inasmuch as no time is fixed the court may at any time on breach of the terms imposed order the sentence into execution. However, if we are in error in so holding and the court after an unreasonable time loses jurisdiction to carry the sentence into effect, we are of the view and hold that a lapse of seven months since the time of pronouncing sentence and stay of execution is not unreasonable and that the court did not abuse its discretion nor had the court lost jurisdiction due to an unreasonable lapse of time. Surely if the Legislature has power to fix penalties for criminal acts it has the undoubted right to make provisions for suspension of execution of same. This our Legislature has done, and if a limited period should be provided after which revocation of suspension should not be permitted appeal should be had to the Legislature and not to the judicial branch of government.

*Judgment affirmed.*

PHILLIPS, P. J., and NICHOLS, J., concur.