**STATE of South Dakota, Plaintiff and Appellee,**

v.

**John ADAMS, Defendant and Appellant.**

**No. 14469.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1984.

Decided Jan. 2, 1985.

John W. Bastian, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Jeff Larson, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

WOLLMAN, Justice.

Defendant appeals from an order revoking his suspended sentence. We affirm.

On October 28, 1980, defendant pleaded guilty to a charge of aggravated assault. On November 19, 1980, defendant appeared before the Honorable Wayne W. Christensen, one of the judges of the Second Judicial Circuit, who pronounced the following sentence from the bench:

> And it is the judgment and sentence of this Court that John Adams, the defendant herein, be sentenced to a term of six years in the South Dakota State Penitentiary there to be kept and confined in accordance with the rules and regulations governing that institution. It is further the order, judgment of this Court that the latter four years of this judgment and sentence of this Court be suspended upon the condition that he pays the cost of hospitalization and medical expenses incurred by the victim in this case .... That he subject himself to the supervision and control of the Office of Corrections under the Department of Pardons and Paroles.

That same day a written judgment was entered, which provided in part that defendant

> be imprisoned in the South Dakota State Penitentiary, located in Sioux Falls, County of Minnehaha and State of South Dakota, for
>
> Six (6) years, with said sentence to run concurrent with defendant's present sentence in the Minnehaha County Jail and with the last four years of said sentence being suspended on the following conditions:
>
> 1. That the said defendant reimburse [the victim] for medical expenses incurred in connection with this case.

> 2. That the said defendant be under the supervision of the Office of Correctional Services for and during a period of four years.

The record does not reveal that a copy of this judgment was personally served upon defendant.

On October 1, 1981, defendant was released from the penitentiary on parole. As a condition of release, defendant signed an agreement that day with the Office of Correctional Services, Board of Charities and Corrections, which contained some fourteen separately numbered paragraphs setting forth the conditions of his being paroled. One of the conditions stated that "I will obey all laws."

On July 23, 1982, defendant was released from parole. At the revocation hearing, the state stipulated that at the time defendant was released from parole he was told by Don Kinder, his parole agent, that he had no further obligation to the Board of Charities and Corrections.

On July 4, 1983, defendant was arrested on a charge of aggravated assault. He was tried on this charge on September 27, 1983, and was found guilty of the lesser included offense of simple assault.

On October 6, 1983, the state filed a motion to revoke the 1980 suspended sentence on the basis of the 1983 simple assault conviction. Following a hearing, the trial court revoked the 1980 suspension and sentenced defendant to serve the remaining four years of the 1980 aggravated assault sentence.

Defendant contends that the circuit court did not have jurisdiction to revoke his suspended sentence in that as of July 1983, only the Board of Pardons and Paroles had such jurisdiction. Defendant frames this argument in terms of the doctrine of separation of powers. He argues that under our present sentencing statutes, once a sentencing court turns a sentenced defendant over to the Office of Correctional Services, Board of Charities and Corrections, there is no provision in law that would allow the trial court to recapture the juris-

diction it has surrendered. Defendant contends that the only statute authorizing a sentencing court to place a person under the supervision of the Board of Charities and Corrections is SDCL 23A–27–19, which provides:

A court which has the power to suspend sentence under § 23A–27–18 shall have and retain jurisdiction for the purpose of suspending any such sentence for a period of one year from the effective date of the judgment of conviction, notwithstanding the fact that the time for an appeal from such judgment is limited to a shorter period of time. A person whose sentence is suspended pursuant to this section is under the supervision of the board of charities and corrections, except as provided in § 23A–27–18.2. The board is charged with the responsibility for enforcing the conditions imposed by the sentencing judge.

Defendant argues that after the one-year period provided by SDCL 23A–27–19 expires, the circuit court has no further jurisdiction to revoke a previously suspended sentence.

■ We conclude that our holdings in *In re Adams*, 360 N.W.2d 513 (S.D.1985), and in *State v. Holter*, 340 N.W.2d 691 (S.D. 1983), clearly answer defendant's contention in this regard. Based upon those decisions, we hold that the trial court was not without jurisdiction to revoke the previously suspended portion of defendant's sentence. As we held in *In re Adams* with respect to SDCL 23A–27–19,

This statute is simply an additional grant of power to suspend a sentence *after* it has been imposed. Nothing in this statute limits the court's power to suspend a portion of a sentence *at the time* it is imposed.

360 N.W.2d at 516 (emphasis in original).

■ Defendant's next contention is that even if the trial court had jurisdiction to revoke the suspended portion of the original sentence, that authority vanished once the Office of Correctional Services, acting through the parole agent, discharged defendant from supervision. Again, we do not agree with defendant's contention. Although the fact that the Office of Correctional Services informed defendant that he was under no further obligation to that agency is an argument against the imposition of the type of sentence entered against defendant, we do not believe that the Office of Correctional Services could through its unilateral action deprive the circuit court of its continuing jurisdiction, recognized in *Holter* and in *Adams, supra*, to revoke the suspended portion of the sentence.

■ Finally, defendant makes the related arguments that he was deprived of liberty without due process of law because he had no knowledge that he was subject to revocation proceedings based upon a violation of law and because he had never been made aware of the four-year period of supervision. We find neither argument to have merit. First, in *Holter*, and again in *Adams*, we held that it is an implied condition in every suspended sentence that a defendant shall not violate the law. Second, defendant was made aware at the time of his sentencing that he was subject to the supervision and control of the Office of Correctional Services during the four-year suspended portion of his sentence.

Having reaffirmed our holdings in *Holter* and *Adams*, we take this opportunity to express our misgivings about the wisdom of imposing a penitentiary sentence followed by a suspended sentence. It is one thing to say that the imposition of such a sentence does not constitute a violation of the constitutional doctrine of separation of powers or run afoul of our sentencing statutes. There remains the question whether the imposition of such a sentence casts a burden upon the Board of Charities and Corrections that is not in keeping with the comity that should exist between the judicial and executive branches of state government. We note that the legislature apparently has taken no action in response to our decision in *Holter*. It may be that our concern about the imposition of such sentences is unwarranted. If, however, there is reason for concern, presumably the

Board of Charities and Corrections will make its views known through legislative channels.

The order revoking the suspended sentence is affirmed.

MORGAN, J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, concur.

FOSHEIM, C.J., and HENDERSON, J., dissent.

FOSHEIM, Chief Justice (dissenting).

Parole is a function of the Executive Department. *See In Re Adams,* 360 N.W.2d 513 (S.D.1985) (Henderson, Justice, and Fosheim, Chief Justice, dissenting "Rationale II"); *State v. Holter,* 340 N.W.2d 691 (S.D.1983) (Henderson, J. dissenting). The trial judge therefore acted outside of his statutory authority and invaded the province of the Board when he undertook to revoke defendant's parole and suspended sentence. This violates the separation of powers doctrine. *See Adams, supra; Holter, supra.*

HENDERSON, Justice (dissenting).

For those reasons expressed in my dissents in *State v. Holter,* 340 N.W.2d 691, 694–95 (S.D.1983), and *Application of Adams,* 360 N.W.2d 513, 517 (S.D.1985), I dissent. Particularly, my Rationale Two in *Application of Adams* is applicable here.

It is regrettable that this Court continues its adherence to unsound holdings. *Holter* and *Application of Adams* are its authority. Misgivings now surface in the majority opinion. Oh, yes, and the legislature might well change the law so that the ill-conceived precedent will take on a hue of legality. But will it? And can we adjudicate upon what the legislature might do? No, we must rule and interpret the legislative acts as they exist. We cannot tailor our decisions to achieve a result which we believe the legislative act should be or might be in the future.

We are on the wrong road. Continuing down that road will not get us to our destination. We must backtrack, get on the right road, and then start a new journey. *Holter* was wrong. *Application of Adams* was wrong. The circuit judges of this state, by creative sentencing, are trying to change the legislative/executive scheme of government. It cannot be done by their robe and gavel nor this Court's loyalty to a mistake.

SDCL 23A–27–19 is the key statute and it has three sentences. It likewise has three thoughts—three parts. The first part is an empowering statute granting a trial court jurisdiction to suspend a sentence for a period of one year from the effective date of the conviction.* *See State v. Means,* 268 N.W.2d 802 (S.D.1978), for holding that circuit court retains jurisdiction for only one year from the effective date of judgment. The second part directs that the Board of Charities and Corrections shall supervise defendants whose sentence is suspended under the first part of the statute. Under the third part, this same board is given the "responsibility for *enforcing* the conditions imposed by the sentencing judge." (Emphasis supplied.) SDCL 1–15–1 establishes the Board of Charities and Corrections and creates it as an arm of the Executive Branch of government. Two of the eight institutions under this board are the State Penitentiary and the Office of Correctional Services. SDCL 24–15–14 provides that the Board of Charities and Corrections is to "employ or appoint such officers and employees as may be necessary to accomplish the proper supervision of parolees and *persons on parole under a suspended sentence.*" (Emphasis supplied mine.) Clearly, the power and the mechanism to use the power is in the Executive Branch of government. By revoking the suspended sentence, the Judicial Branch of government usurped the power given to the Board of Charities and Corrections by statute.

---

* SDCL 23A–31–1(1), a consistent statute, allows for the same period of time for the reduction of a sentence by a trial court.

If the reader will re-read the sentence of the trial court, as set forth in the majority opinion, it will at once become obvious from the last sentence that the trial court specifically placed this defendant-appellant under "the supervision and control of the Office of Corrections under the Department of Pardons and Paroles." With the sentence so specifically stating, and the statutes so specifically expressing, it is beyond my ken that the majority opinion can arrive at an opinion diametrically opposed thereto.

Finally, not only for the aforesaid reasons, but for this additional reason, the trial court had no jurisdiction to revoke defendant-appellant's parole: On July 23, 1982, he was discharged from parole by the Office of Correctional Services. He was informed, and the State of South Dakota so stipulated, that he had "no further obligation to the Department." The separation of powers clause is found in Article II of the South Dakota State Constitution. The powers of government in this state are divided, exactly as it says, into three distinct departments, the legislative, the executive, and the judicial; the powers and duties of each of those departments are prescribed by the state constitution. Therefore, this Court has ruled that it is a violation of the separation of powers clause for the Court to rule on matters which have been constitutionally placed in one of the other two departments. *Dunker v. Brown County Bd. of Educ.*, 80 S.D. 193, 121 N.W.2d 10 (1963). The Governor and the Board of Charities and Corrections, through the Board of Pardons and Paroles, have exclusive jurisdiction to grant pardons and paroles. S.D. Const. art. IV, § 3 and art. XIV, §§ 1 and 2. Based upon his record, he had been officially told by the sovereign that his debt to society, in essence, was paid. The one and only branch of government—the Executive Department—who had his "custody and supervision" and statutorily encharged with the "responsibility for enforcing the conditions imposed by the sentencing judge," as well as rehabilitating defendant, had taken its sovereign hand off of defendant-appellant. The Judicial Branch could not then suffer

to put its hand on him. It cannot review nor overrule the discretionary decision of the parole board. *Accord: In re Question Concerning State Judicial Review*, 199 Colo. 463, 610 P.2d 1340 (1980).

Accordingly, I would reverse the trial court's Order Revoking Suspended Sentence. And, thereby, Mr. Adams would be free.

