**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Randall Kenneth OBAN, Defendant and Appellant.**

No. 14496.

Supreme Court of South Dakota.

Considered on Briefs Nov. 27, 1984.

Decided July 31, 1985.

Thomas H. Harmon, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Max A. Gors of Gors, Braun & Carlon, Pierre, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is an appeal from a circuit court order which revoked a gubernatorially commuted supervised suspended sentence and remitted Randall Kenneth Oban (appellant) to the South Dakota State Penitentiary to serve the remainder of a ten-year sentence.[1] We reverse and remand to the Board of Pardons and Paroles with directions to conduct hearings consistent with the dictates of this ruling.

## FACTS

On November 9, 1979, appellant pled guilty to a charge of second-degree burglary. SDCL 22–32–3. On November 29, 1979, appellant was sentenced to the Penitentiary for a term of fifteen years and fined $10,000. The fine, however, was suspended upon the condition that appellant make restitution to his victims. This sentence was later made part of a Judgment of Conviction dated December 12, 1979.

On November 20, 1980, which was within a year of the Judgment of Conviction, by an Order Modifying Sentence bearing that date, the trial court modified the original sentence in that five years of the fifteen-year sentence was suspended upon the condition that appellant be on supervised parole for that period and that he obey all terms of the parole.[2] In this Order, the trial court reasoned it had "jurisdiction to modify the sentence under SDCL 23A–31–1...." SDCL 23A–31–1 empowers trial courts to correct an illegal sentence or a sentence imposed in an illegal manner and also empowers the trial court to reduce a sentence within one year after imposition. This statute, however, does not empower trial courts to suspend a portion of the sentence and impose supervised parole in its place. SDCL 23A–27–19 does empower trial courts to suspend sentence under SDCL 23A–27–18 for a period of one

---

1. Revocation of the sentence was never taken before an executive board or the Governor.

2. Although the court had the authority under SDCL 23A–31–1 to modify the sentence, the denotation as "parole" was improper. Trial courts cannot grant parole.

year from the effective date of the judgment of conviction. Although we assume the trial court was attempting to act under the purview of the latter statute, we need not address the validity of the trial court's attempted suspended sentence, for as hereinafter outlined, appellant was serving a commuted sentence imposed by the Governor of the State of South Dakota.

On September 1, 1982, Governor William J. Janklow commuted appellant's sentence, and in so doing, imposed a commuted sentence by the following Order:

> IT IS ORDERED that the said sentence of the said Randall Oban be, and the same is hereby, commuted from Fifteen (15) years, Five (5) years suspended on condition he be on supervision for Five (5) years to Ten (10) years, Five (5) years suspended on condition he be on supervision for Five (5) years.[3]

In the Spring of 1983, appellant was paroled from the Penitentiary and on April 4, 1983, he signed an agreement with the Board of Charities and Corrections agreeing to certain conduct during the term of his supervision. One of these conditions was a "no drink rule" whereby appellant promised he would "drink no alcoholic beverages of any kind including 3.2 beer and wine and if I do, I will be in violation of my parole." Appellant's parole officer was George Milos. Milos is not an employee of the Unified Judicial System—the judicial branch—he is an employee of the executive branch.

On June 18, 1983, appellant was arrested for driving while under the influence of an alcoholic beverage. SDCL 32–23–1. Under a plea agreement, the charge was changed and appellant pled guilty to reckless driving. SDCL 32–24–1. Officer Milos decided at this time not to have appellant's parole revoked.

In September 1983, appellant's parole ended and he began to serve the supervised five-year suspended portion of the commuted sentence imposed by Governor Janklow.

Appellant was under the direct jurisdiction of the executive branch. At this time, officer Milos informed appellant that "nothing had changed," that he was still bound by the terms of his supervision, and that his supervision would continue until September 1, 1988.

On December 10, 1983, appellant was again arrested for driving while intoxicated. Although he refused a chemical test, he later testified that he had in fact been drinking before his arrest.

Upon the application/request of officer Milos to the circuit court, the circuit court conducted a hearing so as to consider revoking appellant's suspended sentence/supervised parole status. This action was unilaterally taken by Milos by writing a letter to a judge in Pierre, although he could have petitioned the Board of Pardons and Paroles, for whom he worked and which Board had supervision over appellant. At this hearing, both appellant and appellant's parole officer testified. Thereafter, and by Findings of Fact, Conclusions of Law, and an Order dated January 12, 1984, the circuit court concluded that appellant had "violated the conditions of his parole-probation" by consuming alcoholic beverages on the occasions for which he was arrested. It thus ordered appellant's "probationary status" revoked and remitted him to the Penitentiary "to serve the remainder of his sentence as it has been commuted by Order of the Governor...." It is from this Order that appellant now appeals.[4]

## DECISION

Before addressing the specific issues involved in this case, several key distinctions need to be made. The first is the difference between probation, suspended sentences, and parole.

Although we have recognized that suspended execution of sentence and suspended imposition of sentence coupled with probation are alike in spirit, purpose, and prac-

---

**3.** This power is a constitutional grant. S.D. Const. art. IV, § 3.

**4.** Note that three sentencing concepts were simultaneously recognized.

tice, *State v. Elder*, 77 S.D. 540, 95 N.W.2d 592 (1959), the traditional distinction between probation and suspended sentences is that the former arises before the imposition of sentence and the latter after imposition of sentence. Campbell, *Law of Sentencing* § 11 (1978). Therefore, each are different conceptual sentencing theories. This traditional distinction is recognized in South Dakota statutes, for SDCL 23A–27–12 and SDCL 23A–27–13 empower the circuit courts to place an offender on *"probation" by suspending the imposition* of sentence or without entering a judgment of guilt. SDCL 23A–27–18 also empowers the circuit courts to suspend the execution of a sentence *after its imposition* and thus put the offender on a "suspended sentence."

Other authorities, in defining the differences between probation and parole, have made the following distinctions.

> Probation relates to action taken before the prison door is closed, whereas parole relates to action taken after the door has closed. A parole partakes of the nature of a pardon since it suspends the further execution of a penalty already being inflicted.

21 Am.Jur.2d *Criminal Law* § 567, at 928 (1981).

> A parole is the release of a person from imprisonment whereby, upon specified conditions, he is allowed to serve the balance of his sentence outside prison walls under supervision.

IV Torcia, *Wharton's Criminal Procedure* § 622, at 245 (12th ed.1976).

Suspended sentences, in South Dakota, are statutorily defined in SDCL 23A–27–18 as follows:

> Upon conviction of any misdemeanor or upon the first conviction in this state of a felony, the court having jurisdiction to try the offense may suspend the execution of any sentence imposed during good behavior, subject to such conditions or restitutions as the court may impose.

The suspension order or judgment can be made only by the court in which the conviction occurred.

In any event, up to and including *State v. Marshall*, 247 N.W.2d 484, 487 (S.D.1976), rendered in 1976, this Court had taken the position that "[p]robation ... implies an absence of incarceration." However, the State Legislature, in 1979, enacted SDCL 23A–27–18.1, which permitted imprisonment in the county jail for a period of sixty days as a condition of probation or suspended sentence. In 1983, SDCL 23A–27–18.1 was amended so as to permit imprisonment in the county jail for a period of one hundred eighty days or imprisonment in the State Penitentiary for sixty days as a condition of probation or suspended sentence.

Although probation, suspended sentence, and parole constitute distinct and separate legal concepts, they are often confused and used as interchangeable labels. In the present case, for example, appellant's sentence, as modified by the circuit court and then commuted by the Governor, was denominated probation, suspended sentence, and parole all at the same time. The reality of the situation and the sentence, however, is important, for it determines under whose supervision an offender is and thus who may revoke his regulated freedom.[5]

The second important distinction concerns the separation of powers and the authority to award probation, suspended sentences, and parole, and thus the authority to revoke the same.

▬ The circuit courts of this state do not have the inherent authority to suspend imposition or execution of a sentence. *State v. Huftile*, 367 N.W.2d 193 (S.D. 1985); *State v. Griffee*, 331 N.W.2d 576 (S.D.1983); *Marshall*, 247 N.W.2d 484. Suspended sentences partake of the nature of a pardon which is an exclusive executive, not judicial, power. State *ex rel. Payne v. Anderson*, 43 S.D. 630, 181 N.W. 839

---

5. As noted in Acting Justice Wuest's concurrence in result in *State v. Huftile*, 367 N.W.2d 193, 197 (S.D.1985), the State Legislature amended SDCL 23A–27–19 in 1985 so as to clarify that the Board of Charities and Corrections retains jurisdiction to revoke a suspended sentence imposed under SDCL 23A–27–18.

(1921); S.D. Const. art. IV, § 3. In order for the legislature to confer such power on the circuit courts, a specific constitutional amendment was required. State *ex rel. Caldwell v. Skinner,* 59 S.D. 68, 238 N.W. 149 (1931); S.D. Const. art. V, § 5. The power to sentence comes from statutory and constitutional provisions. *Griffee,* 331 N.W.2d 576; *State v. Poor Thunder,* 302 N.W.2d 412 (S.D.1981).

Under South Dakota Constitution Article V, § 5, and SDCL ch. 23A–27, the circuit courts of this state are empowered to place offenders on probation by suspending imposition of sentence, SDCL 23A–27–12 and SDCL 23A–27–13, and to place offenders on a suspended sentence by suspending execution of sentence, SDCL 23A–27–18, under certain statutorily mandated circumstances and in certain statutorily mandated ways.

In the very recent past, this Court has explained the power of the circuit courts to suspend sentence and thereafter revoke suspension. *Cf., State v. Holter,* 340 N.W.2d 691 (S.D.1983); *Application of Adams on Behalf of Schmit,* 360 N.W.2d 513 (S.D.1985); *State v. Adams,* 360 N.W.2d 519 (S.D.1985); *State v. Huftile,* 367 N.W.2d 193; and *State v. Martin,* 368 N.W.2d 37 (S.D.1985). These cases, however, did not involve a gubernatorially commuted suspended sentence and although the rationale of some of the opinions filed therein are important to the decision at hand, their specific rulings are not controlling. This case is distinguishable on the facts.

 As stated above, the power to grant pardons, commutations, and reprieves is a power held by the Governor—the executive branch of government, S.D. Const. art. IV, § 3, and this pardoning power necessarily includes the power to suspend sentences or a portion thereof, as was done in the present case. State *ex rel. Payne v. Anderson,* 181 N.W. 839. Another division of the executive branch, the Board of Pardons and Paroles, however, has the power, under certain statutory restrictions, to release those sentenced to South Dakota penal institutions on parole, SDCL 24–13–6 and SDCL 24–15–8; to impose reasonable restrictions on parolees, SDCL 24–15–11; and to revoke parole, SDCL 24–15–20 and SDCL 24–15–24. The circuit courts of this state do not have the power, authority, or jurisdiction to parole prisoners, to supervise parolees or those on parole under a suspended sentence, or to revoke parole. Thus, once an offender is within the jurisdiction of the executive branch of government, the judicial branch—the circuit court—loses jurisdiction and control. *State v. Huftile,* 367 N.W.2d 193. This latter statement is subject to three exceptions: (1) SDCL 23A–27–19, granting circuit courts continuing jurisdiction to suspend sentence for one year; (2) SDCL 23A–31–1, granting circuit courts continuing jurisdiction to modify a sentence for one year; and (3) SDCL 23A–27–18.1, to which we earlier alluded. Of course, we recognize that when a circuit court commits an offender to the county jail under SDCL 23A–27–18.2,

> [a] person who is sentenced to a county jail as a condition of suspended imposition of sentence, suspended sentence or suspended execution of sentence, is under the supervision of the court service officer assigned by the court having jurisdiction of the person.

With the foregoing distinctions in mind, we address the two issues herein presented.

## I.

HAS THE RECKLESS DRIVING INCIDENT BEEN WAIVED AS A BASIS FOR PAROLE REVOCATION? WE HOLD THAT IT HAS NOT.

 As outlined in the facts above, appellant was paroled from the Penitentiary in the Spring of 1983 and in September of that same year, appellant's parole under the commuted sentence ended and he began to serve the supervised five-year suspended portion of the gubernatorially commuted sentence. Based on these facts, appellant now contends that because the reck-

less driving incident was not used to revoke his parole before it ended in September 1983, it cannot thereafter be used as a basis for revocation. With this contention, we disagree, because appellant's parole never ended.

An offender may be released from the Penitentiary via several routes. 1) He may serve his complete sentence and then be discharged. 2) He may have his sentence pardoned or commuted by the Governor. 3) He may be paroled by the Board of Pardons and Paroles and then required to serve the remainder of his sentence outside the Penitentiary but under supervision. 4) Or, he may, under the dictates of SDCL 23A–27–19, be released within one year from the effective date of the judgment of conviction by a court suspension of execution of sentence. Under the latter three routes, the offender remains under the supervision of the executive branch of government.

In the present case, appellant's sentence was commuted *and* a portion thereof was also suspended by the Governor. When appellant's parole under the commuted sentence ended in September 1983, he was still on parole by virtue of the suspended portion of the gubernatorial commutation. Thus, appellant cannot be heard to complain if *the appropriate authority* revokes his parole based on a violation which occurred just six months prior to the commencement of revocation proceedings. Such a six-month hiatus does not constitute such a prejudicial delay, waiver, or the stockpiling of violations as to bar appropriate revocation proceedings before *the appropriate authority* based thereon. Appellant argues in his brief that officer Milos gave him a break by not revoking his parole because of the June 18, 1983 reckless driving charge. This argument takes on the hue that because officer Milos gave appellant "a break," waiver has surfaced. We do not agree. We quote with approval *State v. Teal,* 105 Idaho 501, 504, 670 P.2d 908, 911 (1983):

> Probation officers often encounter violations that, in the exercise of good judgment, do not demand the extreme remedy of violation proceedings. Conceivably however, a series of minor violations could conclusively show both the officer and the court that the rehabilitative benefits of probation are not effective. The officer should be free to delay commencing revocation proceedings, for a reasonable period of time, while he sees how the probationer is responding. Unless such delay can be shown to have interfered substantially with the probationer's ability to successfully refute the charge, there is no violation of due process and no waiver of the state's right to proceed.

### II.

COULD THE PAROLE IMPOSED BY VIRTUE OF THE GUBERNATORIALLY COMMUTED SUSPENDED SENTENCE BE REVOKED BY THE CIRCUIT COURT FOR VIOLATION OF A CONDITION IMPOSED BY A PAROLE OFFICER? WE HOLD THE CIRCUIT COURT WAS WITHOUT JURISDICTION TO SO REVOKE.

Appellant contends that since the Governor's Order commuting and suspending his sentence failed to establish conditions for his supervision, his regulated freedom thereunder could not be revoked for violating a condition imposed by his parole officer. More specifically, appellant is asserting that because the Governor's Order did not state that appellant could not drink alcohol, the liberty permitted thereby could not be revoked for drinking. For the reasons hereinafter delineated, however, we hold that the circuit court was without jurisdiction to revoke appellant's parole and we remand to the Board of Pardons and Paroles so as to conduct hearings concerning the propriety of revoking appellant's parole.

Initially, we note that "this court is required *sua sponte* to take note of jurisdictional deficiencies, whether presented by the parties or not. *Long v. Knight Const. Co.,* 262 N.W.2d 207 (S.D.1978); *Estate of Putnam,* 254 N.W.2d 460 (S.D. 1977); *Shryock v. Mitchell Concrete Prod-*

*ucts,* 87 S.D. 566, 212 N.W.2d 498 (1973)." *Huftile,* 367 N.W.2d at 195. Therefore, although appellant failed to present a timely objection below and failed to raise the jurisdiction issue on appeal, we are not estopped, and indeed are required to herein address this issue.

The powers of government in South Dakota are divided into and among the three branches. S.D. Const. art. II. Control of the penal institutions is by the Board of Charities and Corrections under such rules and regulations as the legislature shall make. S.D. Const. art. XIV, §§ 1 and 2. The Board of Charities and Corrections is "an arm of the executive branch of government." *Huftile,* 367 N.W.2d at 197. The Board of Pardons and Paroles, however, which is under the direction and supervision of the Board of Charities and Corrections, grants parole and imposes parole restrictions. *Huftile;* SDCL 24–13–3; SDCL 24–13–6; SDCL 24–15–8; SDCL 24–15–11. The Board of Pardons and Paroles also is empowered to revoke parole. SDCL 24–15–20; SDCL 24–15–24. The circuit courts of this state are not empowered to revoke parole.

 In the present case, appellant was sentenced to a term of years in the Penitentiary by the circuit court. Thereafter, the circuit court suspended part of the original sentence. Governor Janklow then commuted the sentence *and* suspended a portion thereof, thereby substituting a commuted sentence for the court-imposed sentence. After being committed to the Penitentiary—the executive branch—appellant was paroled under the commuted sentence and when this period of parole ended, he was still on parole by virtue of the suspended portion of the gubernatorial commutation. The circuit court had long lost jurisdiction. When appellant's parole officer presented appellant's violations to the circuit court, he presented his revocation application to the wrong authority. Appellant was still on parole and only the Board of Pardons and Paroles could revoke parole. Since appellant was still on parole, he was still bound by the terms and conditions of his parole agreement and the appropriate authority can revoke his parole for violation of its conditions. This case is therefore reversed and remanded to the jurisdiction of the Board of Pardons and Paroles with directions to conduct hearings concerning the propriety of revoking appellant's parole.

FOSHEIM, C.J., MORGAN, J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).

As I read Governor Janklow's commutation order, it merely reduced the length of time that defendant would be required to spend in the state penitentiary from ten years to five years and in no way affected the trial court's order that defendant be under supervision for five years. Accordingly, under our holdings in *State v. Martin,* 368 N.W.2d 37 (S.D.1985); *State v. Adams,* 360 N.W.2d 519 (S.D.1985); *In re Adams,* 360 N.W.2d 513 (S.D.1985); and *State v. Holter,* 340 N.W.2d 691 (S.D.1983), the trial court acted within its jurisdiction in revoking the suspended portion of defendant's sentence.

I find it interesting that after discussing at length the distinction between probation, parole, and suspended sentences and recognizing the allocation of authority among the several branches of government regarding those discrete concepts, the majority opinion purports to direct the Board of Pardons and Paroles to conduct a revocation hearing in this case.

I would affirm the order of revocation.