1999 SD 44

Patrick J. HUGHES, Appellant,

v.

**SOUTH DAKOTA BOARD OF PARDONS AND PAROLES, Appellee.**

No. 20655.

Supreme Court of South Dakota.

Considered on Briefs Feb. 24, 1999.

Decided April 7, 1999.

Jeff Larson, Minnehaha County Public Defender's Office, Sioux Falls, South Dakota, Attorneys for appellant.

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, South Dakota, Attorneys for appellee.

PER CURIAM.

### ACTION

[¶ 1.] Patrick J. Hughes appeals from a circuit court order which affirmed an order of the Board of Pardons and Paroles revoking his suspended sentence. We affirm.

### FACTS

[¶ 2.] The facts are not in dispute.

[¶ 3.] In 1993, Hughes was convicted of having sexual contact with an eleven-year-old girl. He was sentenced to fifteen years in the penitentiary; eight years of the term were suspended.

[¶ 4.] In September 1997, Hughes sentence was suspended. Based upon his history of sex offending, his significant alcohol and drug use, and his failure to complete the third phase of the STOP program, Hughes was placed on an intensive supervision program reserved for high risk offenders.

[¶ 5.] Hughes signed a suspended sentence agreement on September 5, 1997. He agreed, in part, "not to enter any establishment that derives its principal income from the sale of intoxicating beverages" and to have "no contact with any person(s) under age 18." Because of Hughes' hostile disagreement with these provisions, the supervising agent took great pains to explain their meaning to Hughes and to tell Hughes that he must strictly comply with the terms and conditions imposed upon him. Hughes was to remove himself from any close proximity to children and not place himself in a situation where children would be. There would be no mitigating circumstances for allowing him to enter a bar. Hughes' counselor and therapist explained the importance of these provisions:

> Patrick Hughes went through a group orientation which included the review of a standard sex offender treatment contract and his signing of that contract on September 09, 1997. Contract stipulations specifically indicate that no sex offender is to have contact with children under the age of 18 until approval is received from the sex offender treatment program and his parole agent. Patrick's contract also specifically stated that he would not have any alcohol or drug use. These requirements are not merely technical matters; these items are included to best insure that relapse in the area of alcohol and drug use and sexual offending do not occur. Patrick specifically questioned and challenged the items relating to contact with children but the treatment program maintained it's position with Pat, as it does with all offenders, that contact with children is a privilege which is earned over time after demonstrating significant treatment progress to reduce the risk of reoffending sexually. It is further noted that Patrick was somewhat confrontational during the 9–9–97 group orientation regarding issues of informed consent

and the signing of necessary releases of information.

Hughes signed the agreement and placed the words "under duress" after his signature.

[¶ 6.] Within two months of his release, Hughes was taken into custody for violating terms specified in the suspended sentence agreement. He admitted that he had been in a bar on November 7, 1997 for an hour. He also admitted that he had, upon request, taken a friend to pick up her two-year-old daughter and had then given them both a ride to their home.

[¶ 7.] While admitting the conduct, Hughes offered explanations for it. A co-worker was giving Hughes a ride home when Hughes became demanding. The co-worker stopped at a bar two miles outside of Sioux Falls. After waiting in the car for twenty minutes, Hughes entered the bar to call a cab. The co-worker said he was about to leave and would give Hughes a ride when a video lottery winner bought a round of drinks. Hughes remained in the bar and drank pop. As for giving the two-year-old and her mother a ride, Hughes said that he had no verbal or physical contact with the child.

[¶ 8.] The Board of Pardons and Paroles found that Hughes' conduct violated condition # 13G and 13K of his suspended sentence agreement and that Hughes' explanations and mitigating arguments did not excuse or justify the conduct. It revoked the terms of the suspended sentence and fully imposed the terms of the original sentence. The circuit court affirmed, concluding

> All issues discussed in this appeal concern the Board's use of discretion in determining a sentence for the two violations. This court's standard of review is clear abuse of discretion in this instance. *Turo v. Solem* 427 N.W.2d 843 (S.D.1988). Nothing in the record indicates that their discretion was applied in an arbitrary or capricious manner. In fact the parole officer testified as to his concerns and reasons for issuing a violation of parole. The appeal is denied.

## ISSUE

**[¶ 9.] Did the Board of Pardons and Paroles err in revoking the suspended portion of Hughes' sentence?**

 [¶ 10.] SDCL 24–15–11 gives the Board of Pardons and Paroles the authority to place reasonable restrictions on the release of an offender. *Turo v. Solem,* 427 N.W.2d 843 (S.D.1988). Whenever the Board or its executive director is satisfied that there is a violation of the regulation or restrictions placed upon him by the Board, a show cause order may be issued. SDCL 24–15–20(1). If the Board is satisfied that SDCL 24–15–20 has been violated it may revoke the parole and reinstate the terms of the original sentence or modify the conditions. SDCL 24–15–24.

 [¶ 11.] The standard of review of Board of Pardons and Paroles decisions. is

The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

\* \* \* \*

5) clearly erroneous in light of the entire evidence in the record; or

6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In *Matter of Brown,* 1997 SD 133 ¶ 7, 572 N.W.2d 435, 436–437.*

[¶ 12.] Hughes contends that his entering a bar was merely a technical violation since he was in the country, entered to call a cab, and drank pop while waiting for his ride to leave. He contends that giving a two-year-old a ride

was not a violation because he did not talk to or touch the child and, therefore, had no contact with her. A seven block ride does not constitute contact, in his view.

[¶ 13.] Because of the nature of his offense, the severity of his alcohol abuse, and his hostility toward the conditions of his suspended sentence, Hughes' supervising agent as well as his counselor repeatedly and carefully explained the parameters of contact and the prohibition against entering bars.

 [¶ 14.] Hughes misunderstands the nature of the suspended sentence "agreement." It is not a contract in the true sense of the word where two parties negotiate at an arms-length position towards a mutually agreeable result. Here the terms are set forth by the State and the prisoner seeking the benefits of the "suspended sentence agreement" either accepts them and the agreement is implemented or the prisoner does not and the prisoner remains in custody. If the prisoner cannot conform to the rules of the agreement, a flat time sentence is the result.

[¶ 15.] Hughes knew that strict compliance was necessary and that the conditions were not merely technical. Instead, they were designed to ensure against a relapse into sexual and alcohol abuse. Knowing this, Hughes made deliberate and voluntary decisions to enter a bar and give a two-year-old a ride. Under the circumstances of this case, he could have easily avoided violating the conditions by remaining in the car and saying he was unable to drive a child. Instead, he made a conscious decision to violate the conditions which he vehemently disliked. The facts support the Board's revocation and the Board did not abuse its discretion.

[¶ 16.] Affirmed.

---

\* Brown involved conditions imposed by a sentencing judge. The court noted,

The Board retains jurisdiction to revoke the suspended portion of a defendant's sentence for violation of the terms of the suspension. The standard of proof required for a criminal conviction is not necessary to revoke a suspended sentence. *State v. Tuttle,* 460 N.W.2d 157, 160 (S.D.1990). Before the Board may revoke the suspended portion of a sentence, it

must be "reasonably satisfied" that the terms of the suspension have not been followed. *Id.* (citing *State v. Olson,* 305 N.W.2d 852, 853 (S.D.1981)). So long as there is adequate evidence to support that minimal level of scrutiny, the Board has not aroused its discretion in revoking the suspended sentence and its decision should be upheld.

1997 SD 133 at ¶ 8, 572 N.W.2d at 437.

[¶ 17.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, participating.