#25213-a-JKM

**2009 SD 103**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

DARRELL D. MARTIN,                                    Appellant,

  v.

SOUTH DAKOTA BOARD OF
PARDONS AND PAROLES,                          Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GENE PAUL KEAN
Judge

* * * *

JASON W. SHANKS of
May & Johnson, P.C.
Sioux Falls, South Dakota                    Attorneys for appellant.

MARTY J. JACKLEY
Attorney General

MAX A. GORS
Special Assistant Attorney General
Pierre, South Dakota                         Attorneys for appellee.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 5, 2009

OPINION FILED **12/02/09**

#25213

MEIERHENRY, Justice

[¶1.] Darrell Martin appeals the circuit court's decision affirming the South Dakota Board of Pardons and Paroles (Board). The Board revoked Martin's parole for violating the terms of his parole supervision agreement by being terminated from Glory House and sex offender counseling at Great Plains Psychological Services (Great Plains). We affirm.

## FACTS

[¶2.] Martin was serving ten years, with five years suspended, in the state penitentiary for possession of child pornography. Martin was released on parole on June 4, 2008. As a condition of his parole, Martin was required to maintain residence at Glory House in Sioux Falls, an addiction rehabilitation facility, and attend sex offender counseling at Great Plains.

[¶3.] On June 12, 2008, Martin was working in the kitchen of Glory House when an employee claimed to have seen him fondling himself. As a result of this incident, Martin was terminated from Glory House and dismissed from his treatment program at Great Plains. Martin was subsequently returned to the penitentiary and was subject to parole revocation. On July 3, 2008, Martin requested a court-appointed attorney. Martin appeared before a two-member panel of the Board on August 12, 2008, and requested a continuance to obtain court-appointed counsel. A circuit court appointed counsel on August 22, 2008. Martin then appeared before the Board on September 9, 2008, with his attorney and denied the claim he was fondling himself in the kitchen area of Glory House. The Board set a revocation hearing for October 7, 2008, but due to the Board's attorney's

-1-

illness, the hearing was continued until November 18, 2008. The Board rendered its decision on December 11, 2008, concluding that Martin had violated his parole.

[¶4.] Martin appealed the Board's decision to circuit court on December 15, 2008. The circuit court affirmed the Board's decision. Martin appeals from the circuit court's order affirming the Board.

## ISSUES

[¶5.] On appeal, Martin raises several issues concerning his parole revocation. Martin claims the allegations of a parole violation should have been dismissed because a hearing was not conducted within the 90-day time period required by the Board's administrative rules. Martin also claims: the state failed to meet its burden of proof that he violated his parole supervision agreement; the Board's decision that Martin violated his parole supervision agreement was clearly erroneous; the Board's imposition of his suspended sentence was unwarranted, erroneous, arbitrary, and an abuse of discretion; and, he was denied his right to cross-examine one of the witnesses at the hearing.[1]

## STANDARD OF REVIEW

[¶6.] An appeal from the Board is governed by SDCL 1-26-37. *Austad v. S.D. Bd. of Pardons & Paroles*, 2006 SD 65, ¶8, 719 NW2d 760, 764. "We review questions of fact under the clearly erroneous standard; mixed questions of law and fact and questions of law are reviewed de novo." *Id.* (citing *Lee v. S.D. Bd. of*

---

1. Martin also claims the Board used the wrong burden of proof. This claim is without merit and controlled by *Acevedo v. S.D. Bd. of Pardons & Paroles*, where this Court held that the "reasonably satisfied" standard applies in parole revocation hearings. 2009 SD 45, ¶12, 768 NW2d 155, 160.

#25213

Pardons & Paroles, 2005 SD 103, ¶6, 705 NW2d 609, 611). We have stated that "[m]atters of discretion are reviewed under an abuse of discretion standard." *Id.* We have also noted:

> The standard of proof required for a criminal conviction is not necessary to revoke a suspended sentence. Before the Board may revoke the suspended portion of a sentence, it must be 'reasonably satisfied' that the terms of the suspension have not been followed. So long as there is adequate evidence to support that minimal level of scrutiny, the Board has not abused its discretion in revoking the suspended sentence and its decision should be upheld.

*Id.* (citing *In re* Brown, 1997 SD 133, ¶8, 572 NW2d 435, 437); *see Acevedo*, 2009 SD 45, ¶11, 768 NW2d at 159 (rejecting the contention that a parolee is entitled to parole).

## ANALYSIS

*Time Limit to Hold Parole Revocation Hearing*

[¶7.]     The Board promulgates rules regarding parole revocation hearings. SDCL 24-15A-42. A Board rule affords a parolee a final hearing for alleged parole violations within 90 days from the time the parolee is returned to the Department of Corrections facility. ARSD 17:60:11:07. This rule provides:

> A parolee charged with violating a condition, special limitation, or rule of supervision shall be afforded a final hearing within 90 days following the return of the parolee to a South Dakota Department of Corrections facility. The final hearing shall determine if the parolee has violated a condition, special limitation, or rule of supervision and if the violation warrants supervision revocation or some other less restrictive disciplinary action, including continuance of supervision with new restriction. If the parolee admits the violation and signs a waiver of final hearing, the board may revoke supervision without a final hearing.

*Id.*

[¶8.] Martin argues his final parole revocation hearing was not held within the 90 days set forth by ARSD 17:60:11:07. As a result, Martin claims he is entitled to have his parole revocation dismissed with prejudice. Martin contends 117 days passed from the time he was returned to the penitentiary until the day of his final hearing. Martin does not dispute the delay due to his request for counsel should be excluded from the 90-day calculation. The parties, however, disagree how many days to exclude due to his request. Martin claims only the time from when he requested counsel to the day counsel was appointed should be excluded. The Board contends the time from when Martin requested counsel to the time Martin reappeared in front of the Board with counsel should be excluded. Martin calculates the time frame at 106 days, and the Board calculates the time frame at 89 days.

[¶9.] We agree with the Board's calculation. When Martin first appeared before the Board's two-member panel and requested counsel, the panel permitted him 30 days to obtain counsel. A transcript of that hearing shows that Martin agreed to the 30-day continuance. Because Martin agreed to the continuance, the delay in rescheduling his hearing cannot be counted against the 90 days. Consequently, excluding that time from the 90-day calculation was not error.

[¶10.] Even assuming the final hearing did not take place within 90 days from the time he was returned to the penitentiary, Martin did not claim he was prejudiced by the delay. When alleging due process violations, prejudice must be shown. As we indicated in a similar case involving a preliminary parole violation, "alleging no prejudice, and the record disclosing none, defendant will not be heard

to maintain that he suffered any due process deprivation." *Cf.* State v. Ellefson, 334 NW2d 56, 58 (SD 1983). *See, e.g.*, McNeal v. United States, 553 F2d 66, 68 (10th Cir 1977) (holding that delay before a hearing, by itself, does not amount to a violation of due process that would entitle the defendant to be released); State v. Hall, 195 P3d 220 (Kan 2008) (requiring prejudice to the defendant before finding a due process violation in the context of issuing a delayed probation violation warrant); Reese v. State, 866 P2d 82, 84 (Wyo 1993) (concluding time limits should be adhered to, but the failure to do so will not result in the automatic dismissal of the revocation petition); Hackett v. State, 354 NW2d 247 (Iowa Ct App 1984) (stating the court should conduct a constitutional balancing test considering, among other factors, the prejudice to the defendant). Without a showing of prejudice, Martin's contention fails.

*Inability to Contest Program Terminations*

[¶11.] Martin alleges he did not violate his parole by being terminated from the programs at Glory House and Great Plains. Martin's parole agreement stated, in relevant part, that he was to "take advantage of the opportunities offered [to him] by supervision, secure suitable employment or beneficial occupation and support [himself] and dependents as directed" and to "participate, cooperate, and complete any programs as directed." Martin asserts these provisions of his agreement were not violated by his termination because the allegation against him was not sufficiently substantiated. The circuit court rejected Martin's argument and pointed out that "Martin violated his parole by being dismissed or terminated from the programs." We agree. It is undisputed that Martin failed to comply with the

conditions of his parole, in that he was terminated from the programs at Glory House and Great Plains. His parole was conditioned on "tak[ing] advantage of the opportunities offered [to him]" and to "participate, cooperate, and complete any programs as directed." If he was unable to participate and complete the programs, regardless of the reason, the Board had a basis to be "reasonably satisfied" Martin violated his parole. Consequently, the circuit court did not err in affirming the Board's decision.

*Arbitrary and Unreasonable Sanction*

[¶12.]    Martin alleges the Board's imposition of his suspended sentence was clearly erroneous, arbitrary, and an abuse of discretion. *See* SDCL 1-26-36(6). We find no merit to Martin's claim. Our review of the record indicates that the Board was justified in imposing Martin's suspended sentence. The Board had Martin's criminal history before it, his prior parole violations, the most recent allegation stemming from the incident at Glory House, as well as Martin's removal from the sex offender treatment program. We agree with the circuit court, that in light of the facts, the Board did not abuse its discretion. *See* Hughes v. S.D. Bd. of Pardons & Paroles, 1999 SD 44, ¶8, 593 NW2d 789, 790;[2] *Lee*, 2005 SD 103, ¶6, 705 NW2d at 611.

---

2.    Like in *Hughes*, Martin

> misunderstands the nature of the suspended sentence "agreement." It is not a contract in the true sense of the word where two parties negotiate at an arms-length position towards a mutually agreeable result. Here the terms are set forth by the State and the prisoner seeking the benefits of the "suspended sentence agreement" either accepts them and the agreement is implemented or the prisoner does

(continued . . .)

*Disclosure of Expert Witness' Underlying Data*

[¶13.] 	Dr. Kauffman, a forensic psychologist, testified at the revocation hearing that it was his opinion that Martin was likely to reoffend. Kauffman based his opinion, in part, on the Abel Assessment, a report created from Martin's responses to a series of questions administered by a third person. Martin claims he was unable to effectively cross-examine Kauffman without the "raw data" of the assessment, which consisted of questions and Martin's responses. Kauffman testified that the "raw data" formed the basis of his opinions expressed in the Abel Assessment report. Martin asserts that Kauffman's testimony should be struck from the record because without the "raw data," he could not effectively cross-examine Kauffman.[3] The Board's attorney offered to provide the raw data to a qualified psychologist of Martin's choice. Martin, however, effectively ignored this offer and reasserted that the raw data must be disclosed. Given the circumstances, the Board did not abuse its discretion in denying Martin's request. Kauffman

---

(. . . continued)

> not and the prisoner remains in custody. If the prisoner cannot conform to the rules of the agreement, a flat time sentence is the result.

> 1999 SD 44, ¶14, 593 NW2d at 791.

3. 	Martin's argument that *Crawford v. Washington* applies to this case is misplaced. *See* 541 US 36, 124 SCt 1354, 158 LEd2d 177 (2004). *Crawford* applies to criminal proceedings, not civil parole revocation proceedings. United States v. Ray, 530 F3d 666, 668 (8thCir 2004) ("[A] parole revocation hearing should not, for this purpose, be equated with a criminal trial. The Sixth Amendment only applies to 'criminal prosecutions,' and a revocation of supervised release is not part of a criminal prosecution. . . . *Crawford* is not implicated in a supervised release revocation hearing.") (internal citations omitted).

testified about the proprietary and ethical barriers to releasing the "raw data" directly to Martin.  Under the specific facts of this case, Martin's interest in obtaining this information was not compelling enough to justify its production.  Additionally, Martin's counsel was able to effectively cross-examine Kauffman about his opinion without the underlying "raw data."  Even so, without Kauffman's testimony, more than a sufficient basis existed for the Board to revoke his parole.  *See supra* ¶12.

[¶14.]        We affirm on all issues.

[¶15.]        GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.

[¶16.]        SABERS, Retired Justice, sitting for SEVERSON, Justice, disqualified.